**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **SOUTH AUSTIN EMERGENCY CENTER, LLC d/b/a SIGNATURE CARE EMERGENCY CENTER – SOUTH AUSTIN, *et al.,*** Plaintiffs, | §§§§§§ | |
| **v.** | §§ | **A-23-CV-1488-RP** |
| **BLUE CROSS AND BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, *et al.,*** Defendants. | §§§§§§ | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO THE HONORABLE ROBERT PITMAN
UNITED STATES DISTRICT JUDGE:

Before the court are nine motions to dismiss and all related briefing: Defendants' Omnibus Motion to Dismiss Plaintiffs' Fourth Amended Complaint (the "Complaint" or "4thAC") and Strike Claims (Dkt. 107, "Omnibus Motion"); the Anthem Defendants' Motion to Dismiss Plaintiffs' Complaint (Dkt. 108, "Anthem Motion"); the JW Defendants' Individual Motion to Dismiss Counts II-III of the Complaint for Lack of Personal Jurisdiction (Dkt. 109, "JW Motion"); Blue Cross Blue Shield of Arizona's ("BCBS Arizona") Individual Motion to Dismiss Plaintiffs' Complaint (Dkt. 110, "BCBS Arizona Motion"); Blue Cross Blue Shield of Alabama's ("BCBS Alabama") Individual Motion to Dismiss Plaintiffs' Complaint (Dkt. 111, "BCBS Alabama Motion"); Blue Cross Blue Shield Of Michigan's ("BCBS Michigan") Individual Motion to Dismiss Plaintiffs' Complaint (Dkt. 112, "BCBS Michigan Motion"); Blue Cross Blue Shield Tennessee, Inc.'s ("BCBS Tennessee") Partial Motion to Dismiss (Dkt. 113, "BCBS Tennessee

1

Motion"); Premera Blue Cross's ("Premera") Individual Partial Motion to Dismiss Plaintiffs' Complaint (Dkt. 114, "Premera Motion"); and CareFirst of Maryland, Inc. d/b/a CareFirst Blue Cross and Blue Shield of Maryland's ("CFMI") Motion to Dismiss Plaintiffs' Complaint (Dkt. 115, "CFMI Motion").[1] After considering the parties' briefing[2] and applicable law, the court now recommends the following.

## I.    BACKGROUND[3]

### A.    Plaintiffs' Allegations and Causes of Action

Plaintiffs in this case are five for-profit, free-standing Signature Care Emergency Centers (the "SCEC Plaintiffs")[4] and thousands of patients (the "Patient Plaintiffs")[5] who were insured by Defendants and treated by the SCEC Plaintiffs. Dkt. 148 ("Complaint" or "4thAC").

Defendants are 42 entities that operate various regional Blue Cross Blue Shield health insurance plans. 4thAC ¶¶ 9-50. Defendants include Health Care Services Corporation, which does business as Blue Cross Blue Shield of Texas ("BCBS Texas") and other regional Blue Cross Blue Shield plans. 4thAC ¶ 9. All Defendants offer the "BlueCard Program," which enables insureds to receive healthcare services outside their plan's (the "Home Plan") regional service area. 4thAC ¶

---

[1] The motions and related briefing were referred to the undersigned for a Report and Recommendation by United States District Judge Robert Pitman pursuant to 28 U.S.C. § 636(b), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. *See* Dkt. 145.

[2] The parties' briefing is as follows: Dkt. 136 ("Omnibus Resp."); Dkt. 135 ("Omnibus Rep."); Dkt. 126 ("Anthem Resp."); Dkt. 140 ("Anthem Rep."); Dkt. 133 ("JW Resp."); Dkt. 142 ("JW Rep."); Dkt. 132 ("BCBS Ariz. Resp."); Dkt. 138 ("BCBS Ariz. Rep."); Dkt. 131 ("BCBS Ala. Resp."); Dkt. 137 ("BCBS Ala. Rep."); Dkt. 130 ("BCBS Mich. Resp."); Dkt. 139 ("BCBS Mich. Rep."); Dkt. 127 ("BCBS Tenn. Resp."); Dkt. 143 ("BCBS Tenn. Rep."); Dkt. 128 ("Premera Resp."); Dkt. 141 ("Premera Rep."); Dkt. 129 ("CFMI Resp."); Dkt. 144 ("CFMI Rep.").

[3] At this stage of the litigation, all well-pleaded facts are taken as true.

[4] The SCEC Plaintiffs include South Austin Emergency Center, LLC *doing business as* Signature Care Emergency Center – South Austin; Pflugerville Emergency Center, LLC *doing business as* Signature Care Emergency Center – Pflugerville; Killeen Emergency Center, LLC *doing business as* SignatureCare Emergency Center – Killeen; Midland Emergency Center, LLC *doing business as* SignatureCare Emergency Center – Midland; Odessa Emergency Center, LLC *doing business as* SignatureCare Emergency Center – Odessa. 4thAC ¶¶ 3-7.

[5] The Patient Plaintiffs are identified in a Claims List attached to Plaintiffs' Third Amended Complaint and incorporated as Exhibit 1 to Plaintiffs' Fourth Amended Complaint. *See* 4thAC ¶ 8 n.1; Dkt. 47-1 (sealed) ("Claims List"). The Claims List also includes the dates of service and related claim numbers.

52. If this happens, the regional Blue Cross and Blue Shield entity where the insured is treated (the "Host Plan"), here, BCBS Texas, "adjudicates and processes the claims and exercises control over the amounts that are paid to the provider." 4thAC ¶ 52.

The SCEC Plaintiffs are "out of network" with Defendants—they do not have a managed care contract with BCBS Texas or any Defendant. 4thAC ¶ 56. Thus, there is no contractual agreement that governs reimbursement rates between them. Plaintiffs allege Defendants have routinely underpaid the SCEC Plaintiffs for medical services rendered to the Patient Plaintiffs.

Underlying this dispute are approximately 63,390 claims for emergency medical care the SCEC Plaintiffs provided to the Patient Plaintiffs, for which the SCEC Plaintiffs billed $272,913,789 but only received $40,806,773.20 in reimbursement. 4thAC ¶ 90. Because all SCEC Plaintiffs are in Texas, BCBS Texas administered all claims at issue, either as the Patient Plaintiffs' insurer or as the Host Plan for those insured by another Defendant. Plaintiffs allege BCBS Texas acted as the other Defendants' agent in processing and adjudicating the claims. 4thAC ¶ 52.

The Patient Plaintiffs routinely assigned their benefits to the SCEC Plaintiffs and appointed the SCEC Plaintiffs with power of attorney to act as their personal and legal representative to pursue administrative appeals and other legal remedies. 4thAC ¶¶ 2, 92. Accordingly, Plaintiffs allege that the SCEC Plaintiffs have the right to pursue plan benefits as an independent healthcare provider, as the assignee of the plan participant under ERISA, and as the Patient Plaintiffs' appointed personal and legal representative with power of attorney. 4thAC ¶ 93.

Plaintiffs bring three causes of action against Defendants: (1) violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, as to those claims from insurance plans subject to ERISA; (2) breach of contract, as to those claims from insurance plans not subject to ERISA; and (3) declaratory judgment stating Defendants are required to reimburse

the SCEC Plaintiffs at a higher rate than Defendants have covered, as to those claims from insurance plans not subject to ERISA.[6] 4thAC ¶¶ 113-55. Plaintiffs seek actual damages, restitution, attorneys' fees, court costs, interest, and declaratory relief.

### B.    Pending Motions

All Defendants that have been properly served have joined the Omnibus Motion.[7] In the Omnibus Motion, Defendants move to dismiss the Patient Plaintiffs for lack of subject-matter jurisdiction over the Patient Plaintiffs and move to dismiss Plaintiffs' claims for declaratory judgment and implied contract for failure to state a claim. Defendants also move to strike certain reimbursement claims that Plaintiffs have inadvertently included in the Claims List.

In the remaining motions, Defendants move to dismiss the state-law claims for lack of personal jurisdiction and/or failure to state a claim. Certain Defendants also move to dismiss additional parties due to mistake or improper joinder and additional claims due to sovereign immunity. *See* Anthem Mot., CFMI Mot., BCBS Ala. Mot.

No Defendant has moved to dismiss Plaintiffs' ERISA claim.

As the multiple motions present overlapping issues, the undersigned will address each issue in turn.

## II.    Subject Matter Jurisdiction and Standing[8]

Defendants argue that the Patient Plaintiffs should be dismissed from the suit for two reasons. First, Defendants contend the Patient Plaintiffs are not properly before the court because they have not been publicly identified as required by Federal Rules 10 and 17. Omnibus Mot. at

---

[6] Because the declaratory judgment claim implicates state law and not ERISA, the parties and the court treat it as a state-law claim.

[7] *See* Anthem Mot. at 2 n.4; JW Mot. at 1 n.2; BCBS Ariz. Mot. at 1; BCBS Ala. Mot. at 1; BCBS Mich. Mot. at 1; BCBS Tenn. Mot. at 1 n.2; CFMI Mot. at 1 n.1; *see also* Omnibus Mot. at 41 (including the signature of Premera's counsel).

[8] This issue is raised in the Omnibus Motion only.

15-16. Second, Defendants argue that the SCEC Plaintiffs and Patient Plaintiffs cannot have concurrent standing to bring the same causes of action. *Id.* at 16-18. As the second argument is potentially dispositive of the first, the court will address it first.

### A. Applicable Law

A motion to dismiss under Rule 12(b)(1) allows a party to challenge the subject-matter jurisdiction of a court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court must dismiss a complaint for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the dispute. *Home Builders Ass'n v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995). The plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). For subject-matter jurisdiction to exist under Article III, each plaintiff in federal court must establish standing to bring each proposed cause of action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (observing "standing is not dispensed in gross" and "plaintiffs must demonstrate standing for each claim that they press and for each form of relief they seek").

In applying 12(b)(1), the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

B.    **SCEC Plaintiffs' and Patient Plaintiffs' Standing**

Each Patient Plaintiff assigned their benefits to the relevant SCEC Plaintiff and appointed that SCEC Plaintiff as their legal representative to secure benefit payments. 4thAC ¶ 92. Defendants argue *either* the SCEC Plaintiff *or* the Patient Plaintiff has standing to pursue the asserted causes of action. Omnibus Mot. at 16-18. Defendants argue the burden is on Plaintiffs to determine whether benefits were adequately assigned and whether an anti-assignment provision in the relevant Plans bars any assignment of benefits. Omnibus Rep. at 10. Notably, Defendants do not admit the validity of any assignment; nor do they contest the validity of any particular assignment or provide any assurance that they will not do so.

"Every party that comes before a federal court must establish that it has standing to pursue its claims." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). "ERISA does not supply the provider with a basis for bringing its claim directly against the appellants; instead, the provider's standing to bring this lawsuit must be derived from the beneficiary and it is subject to any restrictions contained in the plan." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019). Federal courts lack jurisdiction to hear providers' ERISA claims where there is a deficient assignment or where the Plan contains "a valid and enforceable anti-assignment clause[.]" *Id.*

In *Windmill Wellness (I)*, Judge Garcia permitted the joinder of patient plaintiffs in a similar litigation. When granting a motion for leave to file an amended complaint, which would add the patients as parties, Judge Garcia held, "[i]t is undisputed that *either* [the provider] *or* the plan beneficiaries can recover for the alleged nonpayment and underpayment of claims submitted to Defendants. Which of the two can recover, however, hinges on whether a valid assignment has been made to [the provider]." *Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of*

6

*Tex.*, No. SA-19-CV-01211-OLG, 2022 WL 18585976, at \*2 (W.D. Tex. Aug. 26, 2022) ("*Windmill Wellness (I)*") ("To the extent Defendants still want to challenge the validity of the assignment, they can do so as the case proceeds. But this argument does not bar Windmill from joining the plan beneficiaries as plaintiffs at this stage."). "With *both* Windmill and the plan beneficiaries as plaintiffs, the Court need not determine at this juncture the validity of any purported assignment, as at least one of them has standing to bring this action." *Id.* at \*3 (citing *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014) ("It is well settled that once we determine that at least one plaintiff has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit.")).

Defendants argue that when a cause of action is assigned or transferred, the assignee becomes the real party in interest and the assignor is no longer a real party in interest, and thus, *Windmill Wellness (I)* misinterprets *Salazar*. Omnibus Mot. at 17; Omnibus Rep. at 12. The court does not dispute the former proposition; however, at this stage of the litigation, the validity of any assignment has not been determined or even challenged. As for the latter argument, the *Windmill Wellness (I)* approach has now been utilized twice in this District, and this court will follow suit. *See Windmill Wellness Ranch, L.L.C. v. United Sers. Auto. Ass'n*, No. SA-22-CV-1201-OLG (HJB), 2024 WL 4312254 (W.D. Tex. July 31, 2024) ("*Windmill Wellness (II)*"), *report and recommendation adopted*, No. SA-22-CV-1201-OLG, 2024 WL 4314953 (W.D. Tex. Sept. 24, 2024), (denying without prejudice a similar motion to dismiss that argued patients and providers could not both be plaintiffs). Notably, the SCEC Plaintiffs and the Patient Plaintiffs are not *both* seeking to recover. Taking Plaintiffs' claims as true, only one is entitled to recovery, but at this stage the record is not sufficiently developed to determine who is owed the recovery. Accordingly, it would be premature to dismiss every Patient Plaintiff now.

7

Furthermore, whether a Patient Plaintiff or the SCEC Plaintiff will have the right to recover on a reimbursement claim will be a claim-by-claim determination. Accordingly, the undersigned anticipates that many Patient Plaintiffs may be dismissed by agreement or at summary judgment. The undersigned notes that the discovery burden will remain the same regardless of whether the claims are pursued in the SCEC Plaintiffs' or the Patient Plaintiffs' names. Therefore, the undersigned recommends denying the Omnibus Motion on this issue.

**C.    Federal Rules 10 and 17**

As the court has determined the Patient Plaintiffs should not be dismissed for lack of standing, the court turns to Defendants' arguments that the Patient Plaintiffs should be dismissed because they have not been publicly named. To the extent Defendants argue the Patient Plaintiffs have not sought leave to proceed anonymously, the court notes it already granted Patient Plaintiffs such leave. Dkt. 48 (Hrg Tr.) at 14:17; 46:9-12. Due to the vast number of Patient Plaintiffs in this suit, the undersigned was not compelled by Defendants' arguments that the public has an interest in knowing all the Patient Plaintiffs. *Id.* at 14:22-24. Plaintiffs have provided a list of Patient Plaintiffs under seal. Dkt. 47-1. Thus, Defendants are fully aware of their identity; the only issue is whether the Patient Plaintiff list must be publicly available.

Defendants first argue that federal courts lack jurisdiction over unnamed parties as a case has not been initiated with respect to those parties. Omnibus Mot. at 15. Plaintiffs argue that the Fifth Circuit allows flexibility for anonymity in sensitive health cases and that privacy laws, such as the Health Insurance Portability and Accountability Act ("HIPAA"), allow for compromises to balance transparency and confidentiality. Omnibus Resp. at 7-8; Pub. L. 104-191. Plaintiffs argue that listing Patient Plaintiffs in a sealed exhibit with identifiers, such as claim numbers and dates, is sufficient to comply with the Federal Rules. Omnibus Resp. at 7-8; 4thAC, Ex. 1. Defendants

reply that the sealed exhibit is not sufficient and that Plaintiffs do not accurately reflect the law of HIPAA. Omnibus Rep. at 2-3.

"The Federal Rules of Civil Procedure require plaintiffs to disclose their names in the instrument they file to commence a lawsuit." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). Such public access to information "is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Id.* Rule 10(a) requires a party commencing a civil action to disclose his or her name in the complaint, and Rule 17 demands that every "action must be prosecuted in the name of the real party in interest." *See* FED. R. CIV. P. 10(a); FED. R. CIV. P. 17(a). Importantly, Rule 17(a)(3) was designed "to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable [or honest] mistake has been made." *See* FED R. CIV. P. 17(a)(3) advisory committee's note to 1966 amendment.

In a similar case in this District, the court held that it lacked jurisdiction to adjudicate the patient-plaintiffs' claims when plaintiffs had only provided the putative patient-plaintiffs' initials and did not move to proceed anonymously. *Lone Star 24 Hr ER Facility, LLC v. Blue Cross & Blue Shield of Tex.*, No. SA-22-CV-01090-JKP, 2023 WL 5729947, at *2-*3 (W.D. Tex. Sept. 5, 2023) ("*Lone Star (I)*"). That case contained only 882 individual, unnamed plaintiffs—a far more limited number than the 60,000 Patient Plaintiffs at issue here. *Id.* at *3. However, in a similar case in the Eastern District, the court only required the plaintiffs to name the individual patient plaintiffs after evaluating whether each claim contained a valid assignment. *Paris Emerg. Ctr., LLC v. Blue Cross & Blue Shield of Tex.*, No. 5:24-CV-0002-RWS, 2024 WL 5642497, at *2 (E.D. Tex. Nov. 7, 2024) ("*Paris Emergency (I)*").

The court also notes that neither side addressed the practical concerns of managing a case with over 60,000 named parties on a docket sheet. The court has very real concerns about the electronic and administrative burden that will place on court systems.

As previously stated, this court will follow the precedent in *Windmill Wellness (I)* and allow the parties to make the assignment determination at a later stage. *See Windmill Wellness (I)*, 2022 WL 18585976. Defendants may re-raise this issue of the Patient Plaintiffs proceeding under seal after that determination is made.

Therefore, the undersigned recommends that the Omnibus Motion be denied without prejudice on this issue.

### III.    Personal Jurisdiction for State-Law Claims

Multiple Defendants (the "Personal-Jurisdiction Defendants") move to dismiss Plaintiffs' state-law claims[9] for lack of personal jurisdiction. *See* Anthem Mot.; JW Mot.; BCBS Ariz. Mot.; BCBS Ala. Mot.; BCBS Mich. Mot.; BCBS Tenn. Mot.; CFMI Mot.

#### A.    Applicable Law

When the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Id.* (citation omitted). The court shall accept as true the non-conclusory uncontroverted allegations of the party seeking to assert

---

[9] ERISA conveys personal jurisdiction nationwide. 29 U.S.C. § 1132(e); *see Lone Star 24 HR ER Facility, LLC v. Blue Cross and Blue Shield of Texas*, No. SA-22-CV-01090-JKP, 2025 WL 1840733, *4 (W.D. Tex. July 2, 2025) ("*Lone Star (III)*"). No Defendant challenges personal jurisdiction as to the ERISA claim.

jurisdiction and resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction. *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Sangha*, 882 F.3d at 101.

Personal jurisdiction exists if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

"Minimum contacts" can give rise to either specific jurisdiction or general jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). Once a plaintiff establishes minimum contacts between the defendant and the forum state, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum, (2) the interests of the forum state in the case, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in the most efficient resolution of controversies, and (5) the shared interests of

the states in furthering fundamental social policies. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

### B.    Analysis

Plaintiffs specifically allege the court has personal jurisdiction over BCBS Texas[10] and that BCBS Texas's role in the BlueCard Program as "the Host Plan" creates an agency relationship between it and the other Defendants. 4thAC ¶ 52. Based on this agency relationship, Plaintiffs contend the court has personal jurisdiction over all Defendants.

The Personal-Jurisdiction Defendants argue: (1) they are non-residents of Texas and not subject to general personal jurisdiction; (2) participation in the BlueCard Program does not establish specific personal jurisdiction; and (3) there is not pendent personal jurisdiction based on Plaintiffs' ERISA cause of action. Due to the similar arguments propounded by the Personal-Jurisdiction Defendants, and the similarity of relevant facts, the court will address the Personal-Jurisdiction Defendants' motions together. *Cf. Seiferth v. Helicopteros Atuneros*, Inc., 472 F.3d 266, 274 (5th Cir. 2006) (finding that while specific personal jurisdiction is claim-specific, when the claims relate to the same forum contacts, the analysis can be applied uniformly).

In evaluating personal jurisdiction, this court accepts the following undisputed allegations as true: all Personal-Jurisdiction Defendants are incorporated and maintain their principal places of business outside of Texas. 4thAC ¶¶ 10-50, 52. None of the Personal-Jurisdiction Defendants maintain a regular place of business in Texas, and none have a designated agent for service of process. *Id.* Every Personal-Jurisdiction Defendant is a member of the BlueCard Program. *Id.*

---

[10] BCBS Texas is somewhat of a misnomer as that Defendant is actually "Health Care Service Corporation, d/b/a Blue Cross Blue Shield of Texas, Blue Cross Blue Shield of Illinois and Blue Cross Blue Shield of Oklahoma, Blue Cross and Blue Shield of New Mexico, and Blue Cross and Blue Shield of Montana." 4thAC ¶ 9. Health Care Service Corporation does not move for dismissal for lack of personal jurisdiction.

1.        General Jurisdiction

"A court may assert general jurisdiction over [non-resident defendants] to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation modified). Establishing general jurisdiction is "difficult" and requires "extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609. "Even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required." *Id.* at 609. "But vague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* at 610.

The Personal-Jurisdiction Defendants argue they are not subject to general personal jurisdiction in Texas because they are not "at home" in Texas. *E.g.,* Anthem Mot. at 1; JW Rep. at 3. Plaintiffs attempt to argue that the "voluminous claims made the basis of this lawsuit" are sufficient to demonstrate "extensive" activities in the forum state and subject the Personal-Jurisdiction Defendants to general personal jurisdiction. *E.g.*, JW Resp. at 6. However, the Fifth Circuit has held that "it has become incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (citation modified). It is not enough to merely allege a large volume of claims—Plaintiffs must allege that the volume of claims represents a sufficient portion of the Defendant's business to demonstrate contacts "so continuous and systematic" that the Defendant is "essentially at home." *See Daimler AG v. Bauman*, 571 U.S. 117, 139, 139 n.20 (2014) (citation modified) (finding that "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts" but rather "calls for an appraisal of a

corporation's activities in their entirety" since "[a] corporation that operates in many places can scarcely be deemed at home in all of them"). Plaintiffs have failed to do so, and accordingly, have not alleged general personal jurisdiction over the Personal-Jurisdiction Defendants.

### 2. Specific Jurisdiction

Specific jurisdiction requires that "a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (citation modified). "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (citation modified).

The Personal-Jurisdiction Defendants all argue that Plaintiffs have not alleged specific personal jurisdiction over them. Anthem Mot. at 5; JW Mot. at 4; BCBS Ariz. Mot. at 3; BCBS Ala. Mot. at 3; BCBS Mich. Mot. at 3; BCBS Tenn. Mot. at 7; CFMI Mot. at 5. The Personal-Jurisdiction Defendants argue that Plaintiffs fail to allege that they purposefully directed activities toward Texas and fail to allege any jurisdictional facts beyond their participation in the BlueCard Program. *E.g.*, Anthem Mot. at 5; BCBS Ariz. Mot. at 3; BCBS Tenn. Mot. at 8. Plaintiffs argue that the Personal-Jurisdiction Defendants had purposeful contacts with Texas through either their participation in the BlueCard Program or through their agent, BCBS Texas. *E.g.*, Anthem Resp. at 4-5; BCBS Tenn. Resp. at 5-6; CFMI Resp. at 4-5.

### a. Participation in the BlueCard Program

In *Lone Star (III)*, out-of-state Blue Cross Blue Shield entities moved to dismiss a stand-alone ER's state-law claims for lack of personal jurisdiction. *Lone Star 24 HR ER Facility, LLC v. Blue Cross & Blue Shield of Tex.*, No. SA-22-CV-01090-JKP, 2025 WL 1840733, *4 (W.D. Tex.

July 2, 2025) ("*Lone Star (III)*"). The court held that participation in the BlueCard Program and facilitation of healthcare services in Texas to their insureds did not give rise to specific jurisdiction. *Lone Star (III)*, 2025 WL 1840733, at *6. The court in *Lone Star (III)* followed *St. Luke's Episcopal Hospital v. Louisiana Health Services & Indemnity Co.*, No. CIV.A. H-08-1870, 2009 WL 47125 (S.D. Tex. Jan. 6, 2009), which held "merely providing out-of-state health coverage to insureds does not subject an insurer to personal jurisdiction in every foreign state in which an insured happens to obtain medical services." *Id.* at *5. In *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colorado*, 615 F.3d 364, 369 (5th Cir. 2010), the Fifth Circuit cited *St. Luke's* and rejected the argument that authorizing out-of-state health care treatment and partially paying a bill for that treatment gives rise to specific jurisdiction. The Fifth Circuit further held that joining a national organization allowing for coverage and processing in member states was not a substantial connection to Texas or purposeful availment of the benefits of the forum state. *Id.* at 371-72; *see also Methodist Healthcare Sys. of San Antonio, Ltd. v. Blue Shield of California, Inc, Keenan*, No. SA-23-CV-01414-OLG, 2025 WL 967557, at *10 (W.D. Tex. Mar. 3, 2025), *report and recommendation adopted*, 2025 WL 971755 (W.D. Tex. Mar. 25, 2025).

Accordingly, Plaintiffs cannot establish specific personal jurisdiction over Defendants via their mere participation in the BlueCard Program.

### b. Agency

However, none of the cases just discussed analyzed whether BCBS Texas's role as the Host Plan created an agency relationship between it and other Defendants such that BCBS Texas's contacts should be imputed to other Defendants.

An agent is one who "consent[s] to act on the principal's behalf and subject to the principal's control" when the principal has "authoriz[ed] . . . the agent to act on his behalf." *Finley*

15

*Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 343 (Tex. 2023) (citing *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017)); *see also Gonzalez v. Walgreen Co.*, 140 F.4th 663, 670 (5th Cir. 2025); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018).

Plaintiffs repeatedly pleaded allegations such as:

"the Host Plan adjudicates and processes the claims and exercises control over the amounts that are paid to the provider," 4thAC ¶ 52;

"BCBSTX determines and controls the amounts to be paid to the provider under the home plan," 4thAC ¶ 52;

"For out of network providers, BCBSTX determines the amount to be paid," 4thAC ¶ 52;

"BCBSTX administers plans on behalf of other BlueCard out of state Home Plans, including but not limited to determining the amounts to be paid to providers whether in network or out of network. BCBSTX issues explanations of benefits and payment remittances," 4thAC ¶ 56

"Patients and BCBS members are legally entitled to know how the payment rates and resulting patient financial responsibility is determined by BCBSTX for a Texas plan or for a BlueCard plan, for which BCBSTX determines the rate of payment," 4thAC ¶ 70;

"In non-contracted situations, BCBSTX has inappropriately underpaid and improperly adjudicated payments to SCEC for medically necessary services that it has provided to BCBSTX and other BlueCard plan members," 4thAC ¶ 98;

"BCBSTX's systems for paying out-of-network claims are intentionally flawed and skewed in such a manner that improperly manipulates the data in its claim adjudication systems to calculate inappropriately low amounts of reimbursement for the claims of insureds and plan beneficiaries that receive services from SCEC and/or similar facilities," 4thAC ¶ 99;

"For all claims at issue, SCEC provided emergency medical services and treatment to the insureds and beneficiaries of the BCBSTX plans or plans with claims that BCBSTX administered, processed, and adjudicated and paid," 4thAC ¶ 100; and

"At all times relevant hereto, BCBSTX acted as and/or was acting as the actual or ostensible agent of the Blue Card Plans in processing and adjudicating the claims and determining the rate of payment for the claims." 4thAC ¶ 52.

At this stage of the case, these pleaded facts are taken as true. Plaintiffs have pleaded that BCBS Texas acts on the out-of-state Defendants' behalfs to determine how much providers are owed for services rendered in Texas. These facts are sufficient to find that Plaintiffs have sufficiently pleaded that BCBS Texas is Defendants' agent.

"The actions of an agent may establish minimum contacts over a principal." *McFadin v. Gerber*, 587 F.3d 753, 761 (5th Cir. 2009); *Trois*, 882 F.3d at 490 ("A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state."); *Gilmour for Grantor Trusts for Victory Med. Ctr. Craig Ranch, LP. v. Blue Cross & Blue Shield of Ala.*, No. 5-17-CV-00518-FB-RBF, 2018 WL 1189880, at *4 (W.D. Tex. Mar. 6, 2018), *report and recommendation adopted sub nom. Gilmour, Tr. for Grantor Trusts v. Blue Cross & Blue Shield of Ala.*, No. CV SA-17-CA-518-FB, 2018 WL 1905117 (W.D. Tex. Mar. 27, 2018).

The cases discussed in the previous personal jurisdiction section did not consider whether BCBS Texas acted as the out-of-state defendants' agent. This is distinct from simply participating in a nationwide coverage program. By participating in a nationwide program, a defendant has awareness that an insured may travel to any state. But that is a far cry from the purposeful availment required for specific jurisdiction. That is also very different than allowing an entity in the jurisdiction to make decisions that bind the out-of-state entity. Thus, it is not Defendants' awareness than an insured may travel to Texas that allows the court to exercise personal jurisdiction over them;[11] it is Defendants' decision to empower an entity in Texas to make decisions that bind them that allows the exercise of personal jurisdiction.

---

[11] "Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *Wien Air*, 195 F.3d at 212.

17

In *Gilmour v. Blue Cross & Blue Shield of Alabama*, the court used the personal jurisdiction analysis to determine whether a defendant was present in the District for venue purposes. *Gilmour*, 2018 WL 1189880, at *4. The court found the plaintiffs' allegations that "[t]he Blue Cross Entities regularly used Blue Cross Blue Shield of Texas as an agent/representative while dealing with Victory. This included, without limitation, much of the verification of coverage and benefits, pre-certifications, administration of claims and appeals, and benefit/payment determinations described herein" sufficient to plead agency and sufficient to impute BCBS Texas's contacts with the forum to the out-of-state defendants. *Id*.

Similarly, Plaintiffs here have sufficiently pleaded that BCBS Texas is Defendants' agent. Accordingly, the out-of-state Defendants purposefully availed themselves of the laws of Texas via their agent's contacts with Texas. Accordingly, the court turns to whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

The out-of-state Defendants will bear some burden in defending themselves in this forum. However, the remaining considerations lean towards the fairness of exercising personal jurisdiction. The SCEC Plaintiffs are Texas residents, and thus Texas has some interest in seeing healthcare providers operating in this state reimbursed fairly. The SCEC Plaintiffs have a strong interest in keeping this litigation in one forum, as they have ERISA claims that are properly brought here. The interstate judicial system has a strong interest in the most efficient resolution of this litigation. Exercising personal jurisdiction over the out-of-state Defendants would allow this litigation to proceed in one forum rather than in 30+ separate forums. There are no social policies that strongly affect this analysis. Accordingly, exercising personal jurisdiction over the Personal-Jurisdiction Defendants would not offend traditional notions of fair play and substantial justice.

Accordingly, the exercise of personal jurisdiction over the Personal-Jurisdiction Defendants is appropriate here.

c.   Pendent Jurisdiction[12]

Finally, the parties dispute whether the court should exercise pendent personal jurisdiction over the Personal-Jurisdiction Defendants for the state-law claims based on the court's personal jurisdiction over them for Plaintiffs' ERISA claim. "Pendent personal jurisdiction, like its better known cousin, supplemental subject matter jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks an independent basis for personal jurisdiction over the defendant for another claim that arises out of the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first claim, asserts personal jurisdiction over the second claim." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 783 (N.D. Tex. 2008) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1272-73 (10th Cir. 2002)). "[A] defendant who already is before the court to defend a federal claim is unlikely to be severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended in this circumstance." *Id*. (quoting 4A Wright & Miller, supra, § 1069.7, at 228-29 (3d ed. 2002)).

Although the Fifth Circuit has not yet addressed this doctrine of federal common law, every circuit court to decide the issue has approved pendent personal jurisdiction. *Id*. (collecting cases from the 2nd, 3rd, 4th, 7th, 10th, D.C., and Federal Circuits). District courts in Texas have also exercised pendent personal jurisdiction when appropriate. *See e.g., In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at *17-18 (E.D. Tex. July 6, 2021); *Canyon Furniture Co. v. Rueda Sanchez*, No. SA-18-CV-00753-OLG, 2018 WL 6265041, at *12-14 (W.D. Tex.

---

[12] The court reaches this issue as an alternative basis to exercise personal jurisdiction over the Personal-Jurisdiction Defendants.

Nov. 8, 2018) (delaying the decision of whether to exercise pendent personal jurisdiction until the court has more facts to assess the judicial economy and fairness of doing so); *BidPrime, LLC v. SmartProcure, Inc.*, No. 1:18-CV-478-RP, 2018 WL 5260050, at \*4 (W.D. Tex. Oct. 22, 2018); *Pension Advisory Grp. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 695-96 (S.D. Tex. 2011); *Oblio Telecom, Inc. v. Patel*, 711 F. Supp. 2d 668, 676 (N.D. Tex. 2008).

Courts conduct a three-part analysis to ensure the propriety of pendent personal jurisdiction. First, a court must identify an "anchor" claim, i.e., a claim that allows a court to exercise personal jurisdiction over the defendant. *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at \*17 (E.D. Tex. July 6, 2021). Next, the court examines whether the anchor claim and the claim over which the court lacks an independent basis for personal jurisdiction arise out of the same nucleus of operative fact. *Id*. If yes, then the court must determine whether entertaining the pendent claims against the defendant promotes judicial economy, avoidance of piecemeal litigation, and the overall convenience of the parties. *Id*. This final step—and thus the overall decision to invoke pendent personal jurisdiction—is within the court's discretion.[13] *Id*.

---

[13] The Fifth Circuit's oft-repeated statement that "specific personal jurisdiction [is] a claim-specific inquiry," *Seiferth*, 472 F.3d at 274, is not offended by pendent personal jurisdiction. In discussing specific jurisdiction, the Fifth Circuit clarified that "A plaintiff bringing multiple claims that *arise out of different forum contacts* of the defendant must establish specific jurisdiction for each claim." *Id*. (emphasis added). The Fifth Circuit also stated, "if a plaintiff's claims relate to *different forum contacts* of the defendant, specific jurisdiction must be established for each claim." *Id*. at 275 (emphasis added). In making this last statement, the court cited "5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 3d § 1351, at 299 n.30 (2004) ('There is no such thing as supplemental specific personal jurisdiction; if separate claims are pled, specific personal jurisdiction must independently exist for each claim and the existence of personal jurisdiction for one claim will not provide the basis for another claim.')." *Id*. at 275 n.6. However, courts are exercising pendent personal jurisdiction only where the claims arise out of the same nucleus of operative fact. *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at \*17 (E.D. Tex. July 6, 2021); *see also* 4A Fed. Prac. & Proc. Civ. § 1069.7 "Application of Modern Jurisdictional Principles—Pendent Personal Jurisdiction" (4th ed.) (2025 Update).

Here, it is undisputed that the court has personal jurisdiction over the Personal-Jurisdiction Defendants as to Plaintiffs' ERISA claims. Accordingly, the court will examine whether the ERISA and non-ERISA reimbursement claims[14] arise out of a common nucleus of operative facts.

In *Lone Star (III)*, Judge Pulliam found that an exercise of discretionary pendent personal jurisdiction over the defendants was not appropriate because the state-law claims and ERISA claims did not arise from a common nucleus of operative fact. *Lone Star (III)*, 2025 WL 1840733, at *6. He also found that exercising pendent personal jurisdiction would not be appropriate because the ERISA and non-ERISA reimbursement claims implicate different legal standards, discovery methods, and "would proceed under different procedural tracks, as the ERISA cause of action must be adjudicated by bench trial" whereas a breach of contract claim could be tried by jury. *Id.*

With the greatest respect to Judge Pulliam, the undersigned disagrees. Although the ERISA and non-ERISA reimbursement claims arise from different patient visits and different plans, BCBS Texas's decisions regarding the reimbursement amount was not based on the Home Plans—it was based on BCBS Texas's determination. When a claim is received by the Host Plan, it forwards the claim to the Home Plan to determine whether the medical charges are covered by the terms of the Home Plan. 4thAC ¶ 52. If so, the Host Plan then determines the payment amount based on the Host Plan's contract, or lack thereof, with the provider. 4thAC ¶ 52. Accordingly, the payment-amount determinations were all made by BCBS Texas, according to *its* relationship with the SCEC Plaintiffs. 4thAC ¶ 52 ("For out of network providers, BCBSTX determines the amount to be paid to that out of network provider under the BlueCard Home plan and pursuant to its agreements with other Blue Cross entities under the national BlueCard Program.").

---

[14] As will be discussed, the declaratory judgments Plaintiffs seek are intertwined with their state-law breach of contract claim.

As such, the undersigned finds that the claims will involve the same nucleus of operative facts—namely BCBS Texas's determination of reimbursement rates. The undersigned agrees with Judge Pulliam that ERISA and non-ERISA reimbursement claims implicate different legal standards, discovery methods, and will proceed under different procedural tracks, but believes it is nonetheless still more judicially efficient to have the issues—at which BCBS Texas is at the center—determined in one litigation rather than a myriad of litigations scattered throughout the country.

Accordingly, the exercise of pendent personal jurisdiction over the Personal-Jurisdiction Defendants is appropriate here.

## III.    Rule 12(b)(6) Motions

### A.    Standard of Review

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intell. & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555–57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id*. at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard

higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id*. In sum, a "plaintiff must plead enough facts to nudge the claims across the line from conceivable to plausible." *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (internal quotation marks, brackets, and ellipses omitted) (quoting *Iqbal*, 556 U.S. at 680).

## B.    Count Two: Breach of Contract

Plaintiffs allege two types of breach of contract claims against Defendants. First, Plaintiffs allege the Patient Plaintiffs have contracts—in the form of their insurance plans—with their insurer Defendants. Plaintiffs contend that through the insurance plans Defendants agreed to pay for services provided by the SCEC Plaintiffs to the Patient Plaintiffs. 4thAC ¶ 141. Plaintiffs assert Defendants have breached their contractual obligations to the Patient Plaintiffs by failing to correctly calculate and tender payment to the SCEC Plaintiffs. 4thAC ¶ 141. Thus, in this first type

of claim, the relevant contract is the insurance plan between the Patient Plaintiff and their insurer Defendant.

Second and alternatively, Plaintiffs assert the SCEC Plaintiffs and Defendants entered into an implied-in-fact contractual agreement that Defendants would pay the SCEC Plaintiffs for their services. 4thAC ¶ 141. Plaintiffs allege this contract is inferred from the industry standards, the parties' conduct, and the surrounding circumstances. 4thAC ¶ 141.

In both instances, Plaintiffs alleged "BCBSTX failed to pay in accordance with the terms of the insurance plans." 4thAC ¶ 143. Plaintiffs assert they have been damaged "in the amount of the balance of its usual and customary charges or amounts to be determined to be due and owed under the relevant plan, for which the Patients and SCEC sue BCBSTX." 4thAC ¶ 144.

In the Omnibus motion, Defendants move to dismiss the breach of contract claim based on the implied-in-fact contract between the SCEC Plaintiffs and Defendants. In the remaining motions, Defendants move to dismiss the first iteration of Plaintiffs' breach of contract claim—that Defendants breached the insurance plan agreements by failing to pay SCEC for its services. The court will address the two iterations separately.

1.    Applicable Law

The elements of a valid contract under Texas law are: "(1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *DeClaire v. G & B Mcintosh Fam. Ltd. Partn.*, 260 S.W.3d 34, 44 (Tex. App.—Hous. [1st Dist.] 2008). "The elements of a contract, express or implied, are identical" under Texas law, and the primary distinction between the two "is in the character and manner of proof required to establish them," which means that for implied contracts the elements are "inferred from the circumstances." *Plotkin v. Joekel*, 304 S.W.3d 455,

24

476-77 (Tex. App.—Hous. [1st Dist.] 2009) (citation modified). In order to be legally binding, a contract must be sufficiently definite in its terms so that a court can understand what the promisor undertook. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). While most contracts are recorded in a written instrument, an implied contract may arise from the actions and conduct of the parties. *Haws & Garrett Gen. Contractors v. Gorbett Bros. Welding*, 480 S.W.2d 607, 609 (Tex. 1972).

Under Texas law, there are four elements for a breach of contract claim: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Hous. [1st Dist.] 2001) (emphasis removed); *accord Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015).

### 2.    Implied-in-Fact Contract Claim[15]

Implied contract claims must be dismissed where the plaintiff fails to "allege facts showing that the parties had a meeting of the minds as to the essential terms." *Electrostim Med. Servs.*, 614 F. App'x at 744 (affirming dismissal where provider plaintiff provided "no facts to support its vague allegation that after termination of the provider agreement, the parties entered into an implied contract").

Defendants argue that the Complaint contains no facts on which the court could conclude that formation of an implied contract was plausible and what the terms or breach of that implied contract would constitute. Omnibus Mot. at 28. Particularly, Defendants argue that Plaintiffs have failed to allege a meeting of the minds as to the essential term of price. *Id.* Plaintiffs argue that a

---

[15] This issue is raised in the Omnibus Motion only.

meeting of the minds as to a payment obligation exists and that Defendants' conduct of "accepting emergency services from Plaintiffs for their insureds" implies a contract to pay a reasonable rate consistent with industry standards. Omnibus Resp. at 15. Plaintiffs further argue that "[t]he exact reimbursement rate is a factual issue, not a pleading deficiency." *Id*. at 16.[16]

An agreement regarding price is an essential element of an implied-in-fact contract under Texas law. *Molina Healthcare of Tex., Inc. v. ACS Primary Care Physicians Sw., PA*, No. 01-21-00727-CV, 2024 WL 3608192, at *13 (Tex. App.—Houston [1st Dist.] Aug. 1, 2024). The reimbursement rate between an insurer and a provider is "an essential term of a contract between an emergency care provider and a health insurance company, perhaps even the most important term." *Id*. Plaintiffs failed to allege such an agreement here. Plaintiffs acknowledge that they have "repeatedly attempted" to go in network with Defendants, but that Defendants have "refused to offer any commercially reasonable reimbursement rates." 4thAC ¶ 57. In other words, not only did Plaintiffs fail to plead that there was an agreement between the parties as to price, but they affirmatively pleaded that reimbursement rate negotiations failed. *See Paris Emergency Ctr., LLC v. Blue Cross & Blue Shield of Tex.*, No. 5:24-CV-00002-RWS, 2025 WL 3171163, at *4 (E.D. Tex. Nov. 12, 2025) ("*Paris Emergency (II)*") (finding same).

Accordingly, Plaintiffs failed to state a claim for breach of an implied-in-fact contract. The undersigned recommends granting the Omnibus Motion as to this claim and dismissing Plaintiffs' implied contract claim.

---

[16] To support this statement, Plaintiffs cite *Molina Healthcare of Tex., Inc. v. ACS Primary Care Physicians Sw., PA*, 2024 WL 3608192, at *13 (Tex. App.—Houston [1st Dist.] 2024) (rate disputes are factual). But, as discussed below, *Molina* held there was no implied-in-fact contract where the parties did not agree on a reimbursement rate.

3.    Insurance-Plan Based Contract Claim

While the Omnibus Motion only sought dismissal of the implied-in-fact contract claim, the other motions sought dismissal of Plaintiffs' first iteration of their claim—breach of the insurance-plan contracts between the Patient Plaintiffs and their insurer Defendants. *See* BCBS Ariz. Mot.; BCBS Ala. Mot.; BCBS Mich. Mot.; Premera Mot.; and CFMI Mot.

Defendants first argue Plaintiffs' insurance-plan contract claim was only asserted against BCBS Texas; no other Defendant was mentioned in the paragraphs describing that claim. Plaintiffs argue that all allegations are incorporated against all Defendants, through their participation in the BlueCard Program and with BCBS Texas acting as their agent. Premera Resp. at 2. Plaintiffs also argue "[r]eferences to BCBS Texas exemplify the shared practices among all Defendants, not exclusivity." Premera Resp. at 5.

Plaintiffs' Complaint is far from perfect, and Defendants' argument that only BCBS Texas is named in the breach of contract is not without some merit. However, with respect to their breach of contract claim, Plaintiffs specifically pleaded

> 141. As described above, *the plans necessarily agreed to pay* for such services provided by SCEC to the Patients. . . . .
> 142. *The Plans agreed to pay out-of-network providers*, such as SCEC, particularly for emergency care services provided to members, using a specified payment methodology (the usual and customary rate). . . .

4thAC ¶¶ 141-42 (emphasis added). In their Prayer for Relief, Plaintiffs seek "actual damages to fully compensate them for losses sustained as a result of *Defendants'* breaches of health plan and/or health insurance policies." 4thAC at 66 (emphasis added).

Accordingly, Plaintiffs have poorly but sufficiently pleaded breach of the insurance-plan contracts between the Patient Plaintiffs and their insurer Defendants. The undersigned will recommend the Motions be denied on this issue.

## C.    Count Three: Declaratory Judgment

Plaintiffs seek a declaratory judgment as to the applicability of reimbursement standards. 4thAC ¶¶ 146-55. Specifically, Plaintiffs ask the court to declare three specific statements, discussed below. 4thAC at Prayer (c)i-iii. Defendants contend that the three declarations are improper and seek their dismissal. Omnibus Mot. at 19.

"The Declaratory Judgment Act does not create an independent cause of action; it only provides a form of relief." *Lone Star 24 HR ER Facility, LLC v. Blue Cross & Blue Shield of Tex.*, 785 F. Supp. 3d 215, 220 (W.D. Tex. 2025) (Pulliam, J.) ("*Lone Star (II)*"). Consequently, courts may decline "to exercise their discretion to decide declaratory judgment actions where deciding that action would be redundant in light of the affirmative causes of action before the Court." *Id*. "When the request for a declaratory judgment adds nothing to an existing suit and is merely duplicative of the substantive claims already at issue, the request for a declaratory judgment need not be entertained." *Id*.

### 1.    Requests One and Two

Plaintiffs ask the court to declare:

i. The Texas Insurance Code and Texas Administrative Code require Defendant to reimburse Plaintiffs at a usual, customary and reasonable rates;

ii. Defendants must base the usual, customary and reasonable rates at which it reimburses SCEC facilities "on generally accepted industry standards and practices for determining the customary billed ***charge*** for a service and that fairly and accurately reflects market rates, including geographic differences in costs["."]

4thAC at Prayer (c)i-ii (emphasis added).

The court in *Lone Star (II)* considered substantively identical requests for declaratory judgment.[17] *Lone Star (II)*, 785 F. Supp. 3d at 221-25. Relying on portions of the complaint that

---

[17] Plaintiffs' counsel also represented the plaintiffs in *Lone Star (II)*, explaining the similarity.

are substantively nearly identical to the Complaint here, Judge Pulliam found the requested declarations relied on 28 Texas Administrative Code § 3.3708(b) and (c). *Lone Star (II)*, 785 F. Supp. 3d at 223-23; *compare id. with* 4thAC ¶¶ 63, 72, 147-48.

Section 3.3708 required the usual and customary rate amount to be "based on generally accepted industry standards and practices for determining the customary billed ***charge*** for a service and that fairly and accurately reflects market rates, including geographic differences in costs." 4thAC ¶ 149 (emphasis added). However, on October 15, 2020, a Texas state District Court invalidated Texas Administrative Code § 3.3708(b)(1) and (b)(3), finding no statutory authority for this regulation. *Tex. Ass'n of Health Plans v. Tex. Dep't of Ins.*, Cause No. D-1-GN-18-003846, 2020 WL 8175836, at *1 (419th Judicial Dist., Travis Cnty., Oct. 15, 2020). "Thus, the Texas state District Court's ruling rendered Texas Administrative Code §§ 3.3708(b)(1), (b)(3), and (c)(1) invalid from inception, leaving a gap and ambiguity in calculation and determination of an insurer's obligation for payment of claims for emergency health care services rendered by a 'nonpreferred provider' to an insured patient." *Lone Star (II)*, 785 F. Supp. 3d at 224. The Texas Department of Insurance subsequently amended Administrative Code § 3.3708, explaining that the amendment removed payment rules that were invalidated by court order. *Id*. "TDI, thus, confirmed the term 'usual and customary rate' is not determined by a provider's customary billed ***charge*** for a service." *Id.* (emphasis added).

Judge Pulliam declined to consider the plaintiff's first declaratory request because "[t]he statutes and regulation state what they state. It is improper and unnecessary for this Court to make a declaration regarding what a statute or regulation states or requires. Any declaration by the Court would not serve a useful purpose in settling a legal issue or uncertainty." *Id.* (citing *Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir. 1993)).

29

Judge Pulliam then declined to consider the plaintiff's first and second declaratory requests because "[r]eview of the legislative history reveals Texas Administrative Code § 3.3708 is a regulation that guides interpretation of Texas Insurance Code §§ 1301 and 1271" and the declaratory requests "would require this Court quote the previous version of Texas Administrative Code § 3.3708(b) and (c)(1) that were ruled invalid by a Texas state District Court and consequently amended by the TDI." *Id.* at 224-25.

Judge Pulliam's analysis is persuasive due to its thoroughness and the similarities between the declarations sought and the allegations pleaded in *Lone Star (II)* and this case. Plaintiffs' arguments here do not convince the undersigned not to follow *Lone Star (II)*.[18]

Plaintiffs argue that their requests for declaratory relief do not depend on § 3.3708 because Texas Insurance Code §§ 1271.155 and 1301.0053 "mandate reimbursement at the 'usual and customary rate' for out-of-network emergency care." Omnibus Resp. at 11. However, Texas Administrative Code § 3.3708 is the basis for claiming the usual, customary and reasonable reimbursement rate should be based "on generally accepted industry standards and practices for determining the customary billed *charge*." *Lone Star (II)*, 785 F. Supp. 3d at 224-25.

Furthermore, Plaintiffs also base their request for declaratory relief on a provision of the Affordable Care Act, which is no longer in effect and which did not apply to free standing emergency centers, such as the SCEC Plaintiffs. 4thAC ¶¶ 149, 152; Omnibus Mot. at 20, 24-25, 12 (citing 42 U.S.C. § 300gg–19a(b)(2)(B)). Finally, Plaintiffs' reliance on *Piney Woods ER III v. Blue Cross & Blue Shield of Texas*, 2021 WL 7184947, at *2 (E.D. Tex. June 29, 2021), and *Sugar Land Mission Bend Emergency Ctr., Pllc v. Blue Cross & Blue Shield of Texas*, No. 4:23-CV-04364, 2024 WL 3512811, at *1 (S.D. Tex. July 23, 2024), is not persuasive. Those cases denied

---

[18] *Paris Emerg. (II)*, 2025 WL 3171163, at *4-5, also followed and adopted the reasoning of *Lone Star (II)*.

dismissal of the declaratory judgment claims at issue, but their analyses were based on other reasoning and did not consider the statutory history that *Lone Star (II)* meticulously considered.

Because Plaintiffs' request would require the court to impose a reimbursement rate under a now-defunct regulation, the first two requests for declaratory judgment should be dismissed.

### 2.    Request Three

Plaintiffs also ask the court to declare:

> iii. Defendants failed to cover the Patients' claims for emergency medical care at usual, customary and reasonable rates; and that Plaintiffs are entitled to damages from Defendants in an amount to be determined at a trial on the merits[.]

4thAC at Prayer (c)iii.

If Plaintiffs' claims survive summary judgment, the factfinder would need to determine whether Defendants failed to reimburse Plaintiffs at a usual and customary rate and whether Plaintiffs are entitled to damages. If the court ruled on Plaintiffs' request for declaratory relief in their third request, it would duplicate these efforts and determine liability through a declaratory judgment.

Courts often dismiss declaratory judgment claims where they overlap with substantive claims. *Madry v. Fina Oil & Chemical Co.*, 44 F.3d 1004, 1994 WL 733494, at *2 (5th Cir. 1994) (unpublished) ("When the request for a declaratory judgment adds nothing to an existing suit and is merely duplicative of the substantive claims already at issue, the request for a declaratory judgment need not be entertained."). Accordingly, "because the key issues to be decided in this case are also presented as affirmative causes of action for violation of ERISA and breach of contract, this request for declaratory relief is inappropriate." *See Paris Emerg. (II)*, 2025 WL

3171163, at *5 (citation modified); *Lone Star (II)*, 785 F. Supp. 3d at 226. The undersigned will also recommend Plaintiffs' third declaratory judgment request be dismissed.[19]

## IV.    MISCELLANEOUS ISSUES

Several motions present additional arguments seeking the dismissal of specific Defendants or reimbursement claims. The undersigned addresses each below.

### A.    Motion to Strike

In the Omnibus Motion, Defendants move to strike Plaintiffs' reimbursement claims administered under the Employee Retirement System of Texas ("ERS"), the Federal Employee Health Benefits Act ("FEHBA"), the Teacher's Retirement System of Texas ("TRS") and reimbursement claims subject to the No Surprises Act ("NSA") and SB 1264. Omnibus Mot. at 28-30. Plaintiffs agree they are not seeking reimbursement of claims that are governed by such plans or laws. "To the extent that such claims are included in the claims list attached as an Exhibit hereto, such inclusion is inadvertent, and those claims will be voluntarily dismissed by Plaintiffs upon identification as such by the affected insurer, claim administrator or employer." 4thAC at 50-51 n.2.

When evaluating a motion to strike under Rule 12(f) of the Federal Rules of Civil Procedure, the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Such matters should be stricken only where they possess "no possible relation to the controversy." *United States v. Coney*, 689 F.3d 365, 379 (5th Cir. 2012) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cty.*, Fla., 306 F.2d 862, 868 (5th Cir. 1962)) (citation modified). The decision to grant a motion to

---

[19] Based on this conclusion, the court will not address certain out-of-state Defendants' arguments regarding whether they are subject to the Texas Insurance Code. *See* BCBS Ariz. Mot. at 5; BCBS Ala. Mot. at 5; BCBS Mich. Mot. at 5.

strike is within the court's discretion. *Jacobs v. Tapscott*, 2004 WL 2921806, at *2 (N.D. Tex. Dec. 16, 2004), *aff'd on other grounds*, 277 F. App'x 483 (5th Cir. 2008). "Both because striking a portion of a pleading is a drastic remedy, and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted." *FDIC v. Niblo*, 821 F. Supp. 441, 449 (N.D. Tex. May 6, 1993).

Plaintiffs contend any such claims are included for completeness pending verification. Omnibus Resp. at 16. Plaintiffs assert striking the claims is unnecessary because Plaintiffs agree to remove them upon confirmation. *Id*.

Plaintiffs' time to remove claims pertaining to these plans and statutes has come and gone. Plaintiffs' claims administered through and/or governed under the ERS, FEHBA, TRS, NSA, and SB 1246 are immaterial to the resolution of the remaining disputes between the parties. Accordingly, the undersigned recommends Defendants' motion be granted on this issue.

## B.    BCBS Alabama's Sovereign Immunity

Defendant BCBS Alabama seeks dismissal of all claims administered on behalf Alabama State Employees' Health Insurance Plan ("SEHIP"), the Local Government Health Insurance Program ("LGHIP"), and the Public Employees' Health Insurance Plan ("PEEHIP").[20] BCBS Ala. Mot. at 5-6. BCBS Alabama argues these are entities chartered under Alabama state law as agencies of the State and are entitled to sovereign immunity. *Id.* at 6.

"If sovereign immunity exists, then the court lacks both personal and subject matter jurisdiction to hear the case and must enter an order of dismissal." *de Sanchez v. Banco Central De Nicaragua*, 770 F.2d 1385, 1389 (5th Cir. 1985) (citations omitted).

---

[20] Specifically, BCBS Alabama identifies the claims at issue as those with the following "Ticket Numbers" on the Claims List: K116625, K120743, K120264, K144952, K015981, K102458, K127722, K129658, K145669, K011578, K058209, K061066, K062119, K064047. BCBS Ala. Mot. at 7 n.21.

Plaintiffs argue that BCBS Alabama is a private corporation not entitled to sovereign immunity and that if it were, it has waived sovereign immunity by participation in the BlueCard Program. BCBS Ala. Resp. at 8. BCBS Alabama asserts that it is the plan administrator for these health plans and that Alabama state law requires any review of a final decision by the claims administrator in these plans to be conducted by the Circuit Court of Montgomery County. BCBS Ala. Mot. at 6; ALA. CODE § 36-29-12; ALA. CODE § 16-25A-7(e); ALA. CODE § 11-91A-9. BCBS Alabama argues that Plaintiffs simply cannot sue in this court for the state-employee health plans identified here. BCBS Ala. Rep. at 4.

Plaintiffs' case law inapposite. Review of the SEHIP, LGHIP, or PEEHIP reimbursement claims is not properly brought in Texas. Accordingly, the undersigned recommends granting BCBS Alabama's Motion as to this issue and dismissing the claims identified by BCBS Alabama.

### C.    Anthem Motion – Dismissal of Parties

In their motion, Anthem Defendants further argue that dismissal is proper as to Defendants Healthy Alliance Life Insurance Company, Blue Cross of California, and Anthem Blue Cross Life and Health Insurance Company. Anthem Mot. at 7. Anthem argues that Plaintiffs failed to identify any reimbursement claims against Healthy Alliance Life Insurance Company and failed to distinguish reimbursement claims between the latter two Defendants. *Id.* Plaintiffs argue that the Complaint details the Anthem Defendants' underpayments and that all claims, including against the California Anthem entities, are listed in Exhibit 1. Anthem Resp. at 8. Plaintiffs further argue, at this stage, it is sufficient to allege claims collectively against the California Anthem entities as these Defendants operate as affiliates. *Id.* Anthem failed to reply to this argument. *See* Anthem Rep.

34

The undersigned finds that Plaintiffs have sufficiently alleged their claims against these three Defendants in the Complaint, including the Claims List. Accordingly, the undersigned recommends denying the Anthem Motion as to dismissal of these three entities.

### D.    CFMI Motion – Dismissal of a Party

Defendant CFMI argues that Plaintiffs improperly named "Care First, Inc." as a defendant in this lawsuit and ask that Plaintiffs' Complaint be dismissed as to Care First, Inc. CFMI Mot. at 1 n.2 (citing 4thAC ¶ 32). Plaintiffs made no response to this assertion, and the undersigned finds CFMI has shown good cause. Accordingly, the undersigned recommends granting CFMI's Motion as to this issue and dismissing Defendant Care First, Inc. from this lawsuit.

### E.    *Sua Sponte* Issues

Finally, in an effort to craft the most accurate recommendations below, the court attempted to confirm whether all Defendants had joined the Omnibus Motion. This was a challenging task as some Blue Cross and Blue Shield regional plans are their own entities while others such as BCBS Texas and BCBS Illinois are divisions of named Defendants. The court is satisfied that all Defendants who have appeared have joined the Omnibus Motion.

But the court was unable to place certain Defendants named in the Fourth Amended Complaint. These include:

Blue Cross and Blue Shield of Kansas City dba Blue Cross and Blue Shield of Kansas City Missouri,[21] 4thAC ¶ 13;

Anthem Health Plans, Inc. dba Anthem Blue Cross Blue Shield of Connecticut, 4thAC ¶ 24;

Anthem Blue Cross Blue Shield of Indiana, a division of Anthem, Inc. 4thAC ¶ 27; and

Blue Cross & Blue Shield of North Dakota, 4thAC ¶ 48.

---

[21] This may be the party that was dismissed on January 14, 2026. Dkt. Nos. 150, 151.

These Defendants may not be legal entities, or these Defendants may be misnamed. However, the Fourth Amended Complaint was officially filed on May 8, 2025. Dkt. 148. There is no evidence any of these parties have been served. Accordingly, the undersigned will recommend these Defendants be dismissed. *See* FED. R. CIV. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

### IV.   CONCLUSION

This is a monster of a case. Even after dismissing the discrete reimbursement claims and Defendants recommended for dismissal, this case will involve tens of thousands of claims and an enormous number of Defendants. However, declining to exercise jurisdiction over the state-law breach of contract claim would result in 30+ smaller versions of this case throughout the country. Neither option is ideal.

Because Plaintiffs are the master of their Complaint, *see Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 715 (5th Cir. 2021), it would be easy to blame Plaintiffs for creating this beast. However, the undersigned believes the true fault lies with Defendants. BCBS Texas made every single payment decision at issue here, either as the Patient Plaintiffs' insurer or as their Host Plan. BCBS Texas could agree with the other Defendants to allow Plaintiff to proceed against it alone in exchange for appropriate indemnity. It has not done so.

Similarly, Defendants, who presumably know their plans' terms better than any Plaintiff, could identify which reimbursement claims originate from plans with anti-assignment provisions. They have not done so.

Thus, recognizing the strain this case will place on the District Judge's docket, the undersigned has little sympathy for the burden this litigation will place on Defendants.

## V.   RECOMMENDATIONS

For the reasons stated above, the court **RECOMMENDS** that:

1. The Omnibus Motion to Dismiss and its included Motion to Strike (Dkt. 107) be **GRANTED IN PART AND DENIED IN PART**. Specifically, the undersigned recommends that:

    a. The Motion to Strike be **GRANTED** and that all ERS, TRS, FEHBA reimbursement claims as well as reimbursement claims subject to the NSA and SB 1264 be **STRICKEN** from the Complaint.

    b. The Omnibus Motion be **DENIED** as to subject matter jurisdiction over the Patient Plaintiffs for failure to comply with Rules 10 and 17;

    c. The Omnibus Motion be **DENIED WITHOUT PREJUDICE** as to the matter of Plaintiffs' standing until the validity of each assignment is assessed;

    d. The Omnibus Motion be **GRANTED** as to Breach of an Implied-in-Fact Contract and that this claim be **DISMISSED WITH PREJUDICE**;

    e. The Omnibus Motion be **DENIED** as to Breach of the Insurance-Plan Contracts; and

    f. The Omnibus Motion be **GRANTED** as to Count Three: Declaratory Judgment and that Count Three be **DISMISSED WITH PREJUDICE**;

2. Defendants' Motions to Dismiss (Dkts. 108, 109, 110, 112, 113, and 114) be **DENIED**;

3.  CFMI's Motion to Dismiss (Dkt. 115) be **GRANTED** as to the dismissal of Defendant Care First, Inc. and **DENIED** in all other respects;

4.  BCBS Alabama's Motion to Dismiss (Dkt. 111) be **GRANTED** as claims administered on behalf Alabama State Employees' Health Insurance Plan ("SEHIP"), the Local Government Health Insurance Program ("LGHIP"), and the Public Employees' Health Insurance Plan ("PEEHIP") with the following "Ticket Numbers" be dismissed from the suit: K116625, K120743, K120264, K144952, K015981, K102458, K127722, K129658, K145669, K011578, K058209, K061066, K062119, K064047, but **DENIED** in all other respects;

5.  Named Defendants Blue Cross and Blue Shield of Kansas City dba Blue Cross and Blue Shield of Kansas City Missouri; Anthem Health Plans, Inc. dba Anthem Blue Cross Blue Shield of Connecticut; Anthem Blue Cross Blue Shield of Indiana, a division of Anthem, Inc.; and Blue Cross & Blue Shield of North Dakota be **DISMISSED WITHOUT PREJUDICE** as they have not been timely served;

6.  And that Plaintiffs be **ORDERED** to file an updated Reimbursement Claims List within 30 days that conforms to the District Judge's rulings on these recommendations.

## VI.    OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Judge need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Judge of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED January 27, 2026.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE