IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SOUTH AUSTIN EMERGENCY CENTER, LLC, *d/b/a* SIGNATURE CARE EMERGENCY CENTER – SOUTH AUSTIN, et al., | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | 1:23-CV-1488-RP |
| BLUE CROSS BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, et al., | § § § § § | |
| Defendants. | § § | |

## **ORDER**

Before the Court is the Report and Recommendation of the United States Magistrate Judge concerning nine motions to dismiss in this matter and all related briefing.[1] (R. & R., Dkt. 152). The nine motions to dismiss are Defendants' Omnibus Motion to Dismiss Plaintiffs' Fourth Amended Complaint (the "Complaint" or "4thAC") and Strike Claims (Dkt. 107, "Omnibus Motion"); the Anthem Defendants' Motion to Dismiss Plaintiffs' Complaint (Dkt. 108, "Anthem Motion"); the JW Defendants' Individual Motion to Dismiss Counts II-III of the Complaint for Lack of Personal Jurisdiction (Dkt. 109, "JW Motion"); Blue Cross Blue Shield of Arizona's ("BCBS Arizona") Individual Motion to Dismiss Plaintiffs' Complaint (Dkt. 110, "BCBS Arizona Motion"); Blue Cross Blue Shield of Alabama's ("BCBS Alabama") Individual Motion to Dismiss Plaintiffs' Complaint (Dkt. 111, "BCBS Alabama Motion"); Blue Cross Blue Shield of Michigan's ("BCBS Michigan")

---

[1] The parties' briefing is as follows: Dkt. 136 ("Omnibus Resp."); Dkt. 135 ("Omnibus Rep."); Dkt. 126 ("Anthem Resp."); Dkt. 140 ("Anthem Rep."); Dkt. 133 ("JW Resp."); Dkt. 142 ("JW Rep."); Dkt. 132 ("BCBS Ariz. Resp."); Dkt. 138 ("BCBS Ariz. Rep."); Dkt. 131 ("BCBS Ala. Resp."); Dkt. 137 ("BCBS Ala. Rep."); Dkt. 130 ("BCBS Mich. Resp."); Dkt. 139 ("BCBS Mich. Rep."); Dkt. 127 ("BCBS Tenn. Resp."); Dkt. 143 ("BCBS Tenn. Rep."); Dkt. 128 ("Premera Resp."); Dkt. 141 ("Premera Rep."); Dkt. 129 ("CFMI Resp."); Dkt. 144 ("CFMI Rep.").

Individual Motion to Dismiss Plaintiffs' Complaint (Dkt. 112, "BCBS Michigan Motion");

BlueCross BlueShield of Tennessee, Inc.'s ("BCBS Tennessee") Partial Motion to Dismiss (Dkt. 113,

"BCBS Tennessee Motion"); Premera Blue Cross's ("Premera") Individual Partial Motion to

Dismiss Plaintiffs' Complaint (Dkt. 114, "Premera Motion"); and CareFirst of Maryland, Inc. d/b/a

CareFirst Blue Cross and Blue Shield of Maryland's ("CFMI") Motion to Dismiss Plaintiffs'

Complaint (Dkt. 115, "CFMI Motion"). The Defendants who submitted the Omnibus Motion

("Omnibus Defendants")[2] filed timely objections to the Report and Recommendation. (Omnibus

Objs., Dkt. 156). The "Home Plan Defendants,"[3] which include all timely served Defendants other

than Premera Blue Cross and Blue Cross Blue Shield of Texas, a division of Health Care Service

Corporation ("BCBS Texas"), also filed timely objections to the Report and Recommendation.

(Home Plan Objs., Dkt. 155). Having considered the parties' briefs, the evidence, and the relevant

law, the Court finds that the Report and Recommendation should be **ADOPTED IN PART AND**

**REJECTED IN PART**.

## I. BACKGROUND

Plaintiffs in this case are five for-profit, free-standing Signature Care Emergency Centers

(the "SCEC Plaintiffs")[4] and thousands of patients (the "Patient Plaintiffs")[5] who were insured by

---

[2] The Magistrate Judge points out that the many Defendants in this case makes understanding which Defendants signed on to which motions to dismiss confusing. (R. & R., Dkt. 152, at 35). The Magistrate Judge concluded that "all Defendants that have been properly served have joined the Omnibus Motion," (*id.* at 4, 35), and this Court has no reason not to credit that conclusion.

[3] The Home Plan Defendants "filed [] several motions to dismiss, each of which challenged the exercise of personal jurisdiction over them as to the non-Employee Retirement Income Security Act counts in the [4thAC]." (Home Plan Objs., Dkt. 155, at 2 n.1). (*See* Dkts. 108, 109, 110, 111, 112, 113, & 115).

[4] The SCEC Plaintiffs include South Austin Emergency Center, LLC d/b/a Signature Care Emergency Center – South Austin; Pflugerville Emergency Center, LLC d/b/a Signature Care Emergency Center – Pflugerville; Killeen Emergency Center, LLC d/b/a SignatureCare Emergency Center – Killeen; Midland Emergency Center, LLC d/b/a SignatureCare Emergency Center – Midland; Odessa Emergency Center, LLC d/b/a SignatureCare Emergency Center – Odessa. (4thAC, Dkt. 148, at 4–5).

[5] The Patient Plaintiffs are identified in a Claims List attached to Plaintiffs' Third Amended Complaint and incorporated as Exhibit 1 to Plaintiffs' Fourth Amended Complaint. (*See* 4thAC, Dkt. 148, at 5 n.1; Dkt. 47-1 (sealed) ("Claims List")). The Claims List also includes the dates of service and related claim numbers.

Defendants and treated by the SCEC Plaintiffs.[6] Defendants are forty-two entities that operate various regional Blue Cross Blue Shield health insurance plans. (4thAC, Dkt. 148, at 5–18). Defendants include BCBS Texas and other regional Blue Cross Blue Shield plans. (*Id.* at 5). All Defendants offer the "BlueCard Program," which enables insured individuals to receive healthcare services outside their plan's (the "Home Plan") regional service area. (*Id.* at 19). Plaintiffs contend that if this happens, the regional Blue Cross Blue Shield entity where the insured individual is treated (the "Host Plan"), which in this matter is BCBS Texas, "adjudicates and processes the claims and exercises control over the amounts that are paid to the provider." (*Id.*). Plaintiffs further allege that "[t]he amount paid is described on remittance reports and explanation of benefits that are issued by [BCBS Texas], and [BCBS Texas] determines and controls the amounts to be paid to the provider under the home plan" as well as that "[a]t all times relevant hereto, [BCBS Texas] acted as and/or was acting as the actual or ostensible agent of the Blue Card Plans in processing and adjudicating the claims and determining the rate of payment for the claims." (*Id.* at 19–20).

This issue of which entity determines the applicable coverage determination in the BlueCard Program is a critical one. In both sets of objections, the objecting Defendants state that the Home Plan entities make the coverage determination when an insured individual is treated out of state, and then those Home Plan entities return the claim to BCBS Texas to pay the claim if there is any coverage for the individual. (Home Plan Objs., Dkt. 155, at 3 n.4; Omnibus Objs., Dkt. 156, at 9–10). Both sets of objections cite Fifth Circuit opinions in which that court has considered claims related to the BlueCard Program and found that the Home Plan is the entity which determines how much will be paid on a claim based on the terms of the insured individual's health plan. *See Health Care Serv. Corp. v. Methodist Hosp. of Dall.*, 814 F.3d 242, 246–47 (5th Cir. 2016) ("As for BlueCard

---

[6] The Court borrows much of this Section from the Magistrate Judge's thorough Report and Recommendation.

claims administered by [BCBS Texas], the BlueCard program allows beneficiaries covered by out-of-state Blue Cross and Blue Shield plans to access their coverage when receiving medical services in a state other than the one in which their plans are based. If, for example, an out-of-state Blue Cross beneficiary receives medical care in Texas, the medical provider submits a claim to [BCBS Texas], which forwards the claim to the beneficiary's out-of-state Blue Cross plan. That out-of-state Blue Cross plan makes a coverage determination, then returns the claim to [BCBS Texas] to pay the claim if there is coverage. Finally, the out-of-state plan reimburses [BCBS Texas] for any payments made on its behalf."); *Angelina Emergency Med. Assocs. PA v. Blue Cross & Blue Shield of Ala.*, 156 F.4th 505, 512 (5th Cir. 2025) ("The Physician Groups then, on behalf of the relevant member physician, submit a claim for reimbursement to [BCBS Texas] [] as the in-state "host" plan. [BCBS Texas] transmits the claim to the relevant out-of-state Blue Plan to 'adjudicate the claim in accordance with the terms of the patient's health benefit plan . . .  and transmit back to [BCBS Texas] the claim determination for processing and payment.' [BCBS Texas] is then responsible for paying the Physician Group based on the other Blue Plan's determinations using funds provided by the out-of-state Blue Plan."). The Court will return to this issue in a later section.

The SCEC Plaintiffs are "out of network" with Defendants—they do not have a managed care contract with BCBS Texas or any Defendant. (4thAC, Dkt. 148, at 21–22). Thus, there is no contractual agreement that governs reimbursement rates between them. Plaintiffs allege Defendants have routinely underpaid the SCEC Plaintiffs for medical services rendered to the Patient Plaintiffs. Underlying this dispute are approximately 63,390 claims for emergency medical care the SCEC Plaintiffs provided to the Patient Plaintiffs, for which the SCEC Plaintiffs billed $272,913,789.00 but only received $40,806,773.20 in reimbursement. (*Id.* at 89). Because all SCEC Plaintiffs are in Texas, BCBS Texas paid all claims at issue, either as the Patient Plaintiffs' insurer or as the Host Plan for those individuals insured by another Defendant.

4

Plaintiffs allege BCBS Texas acted as the Home Plan Defendants' agent in processing and adjudicating the claims. (*Id.* at 19–20). Plaintiffs also allege that "[e]ach of the individual Patients not only assigned benefits to the SCEC facilities, but also appointed SCEC to act as their personal and legal representative to pursue administrative appeals, and to bring a lawsuit, if necessary, in order to secure proper health plan benefits for the emergency medical care received during their admissions to SCEC facilities." (*Id.* at 3, 40–41). Accordingly, Plaintiffs allege that the SCEC Plaintiffs have the right to pursue plan benefits as an independent healthcare provider, as the assignee of the plan participant under the Employee Retirement Income Security Act ("ERISA"), and as the Patient Plaintiffs' appointed personal and legal representative with power of attorney. (*Id.* at 42).

Plaintiffs bring two causes of action against Defendants: (1) violations of ERISA, 29 U.S.C. §§ 1001 et seq., as to those claims from insurance plans subject to ERISA; and (2) breach of contract, as to those claims from insurance plans not subject to ERISA. (*Id.* at 50–65). Plaintiffs seek actual damages, restitution, attorneys' fees, court costs, interest, and declaratory relief. (*Id.* at 66).

## II. PROCEDURAL HISTORY

In the Omnibus Motion, the Omnibus Defendants move to dismiss the Patient Plaintiffs for lack of subject matter jurisdiction over the Patient Plaintiffs and move to dismiss Plaintiffs' claims for declaratory judgment and implied contract for failure to state a claim. (Dkt. 107, at 14–27). The Omnibus Defendants also move to strike certain reimbursement claims that Plaintiffs have inadvertently included in the Claims List. (*Id.* at 36–37). In the other motions to dismiss, Defendants move to dismiss Plaintiffs' breach of contract claim for lack of personal jurisdiction and/or failure to state a claim. (*See* Dkts. 108–115). Certain Defendants also move to dismiss additional parties due to mistake or improper joinder as well as claims due to sovereign immunity. (*See* Anthem Mot., Dkt. 108; CFMI Mot., Dkt. 115; BCBS Ala. Mot., Dkt. 111). No Defendant has moved to dismiss Plaintiffs' ERISA claim.

The Home Plan Defendants object to the Magistrate Judge's recommendation that this Court should deny their motions to dismiss the breach of contract claim against them for lack of personal jurisdiction. (Home Plan Objs., Dkt. 155, at 2). The Home Plan Defendants argue that "the Magistrate Judge erroneously found that a single, conclusory allegation of 'agency' was sufficient to support specific personal jurisdiction as to all Home Plan Defendants." (*Id.*). They also argue that "[t]he Magistrate Judge [] erred in his application of 'pendent personal jurisdiction' to find that specific personal jurisdiction over benefit claims for patient transactions governed by ERISA (Count I) could also be asserted over separate contract claims for patient transactions not subject to ERISA (Count II)." (*Id.*).

The Omnibus Defendants object to the portion of the Magistrate Judge's Report and Recommendation which recommends denying their Omnibus Motion to Dismiss, (Dkt. 107), under Federal Rule of Civil Procedure 12(b)(1) as to the Patient Plaintiffs. (Omnibus Objs., Dkt. 156, at 6). Omnibus Defendants re-urge that Plaintiffs have not "satisfied their burden to establish standing for the Patient Plaintiffs," (*id.* at 13), and argue that the Magistrate Judge erred both by recommending that the unnamed Patient Plaintiffs can proceed without disclosing their names and by "accepting Plaintiffs' argument that it is permissible at the pleading stage for the [4thAC] to allege both a Patient Plaintiff and a SCEC Plaintiff has standing on the same claim, deferring determination of the real party in interest until later," (*id.* at 17).

### III. LEGAL STANDARD

The Federal Rules of Civil Procedure authorize magistrate judges to make findings and recommendations for dispositive motions, such as motions to dismiss. Fed. R. Civ. P. 72(b)(1). For dispositive motions, parties are entitled to *de novo* review of any part of a magistrate judge's report and recommendation that has been properly objected to. *Id.* at (b)(3). Even when no objections are made, the district judge has the discretion to "accept, reject, or modify the recommended

6

disposition." *Id.*; *see also Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("while [28 U.S.C. § 636(b)(1)(c)] does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard"). Accordingly, this Court will review *de novo* the portions of the Magistrate Judge's Report and Recommendation that the Omnibus Defendants objected to, (Dkt. 156), and that the Home Plan Defendants objected to, (Dkt. 155). The remainder of the Report and Recommendation is reviewed for clear error. *See* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the district court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

## IV. DISCUSSION

### A. Home Plan Defendants' Objections

The Home Plan Defendants object to the Magistrate Judge's recommendation that this Court should deny their motions to dismiss the breach of contract claim against them for lack of personal jurisdiction. (Home Plan Objs., Dkt. 155, at 2). The Home Plan Defendants argue that "the Magistrate Judge erroneously found that a single, conclusory allegation of 'agency' was sufficient to support specific personal jurisdiction as to all Home Plan Defendants." (*Id.*). They also argue that "[t]he Magistrate Judge [] erred in his application of 'pendent personal jurisdiction' to find that specific personal jurisdiction over benefit claims for patient transactions governed by ERISA (Count I) could also be asserted over separate contract claims for patient transactions not subject to ERISA (Count II)." (*Id.*). The Court begins its analysis with the Magistrate Judge's finding that this Court has personal jurisdiction over the Home Plan Defendants for Plaintiffs' state law breach of contract claims through an agency relationship between the Host Plan (BCBS Texas) and the Home Plan Defendants. (R. & R., Dkt. 152, at 15–19).

7

In evaluating a Rule 12(b)(1) motion, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). When the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a *prima facie* case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Id.* (citation omitted). "Where facts relevant to jurisdiction are disputed, the district court can weigh the evidence and 'resolve disputed issues of fact to the extent necessary to determine jurisdiction.'" *T&W Holding Co., L.L.C. v. City of Kemah*, 160 F.4th 622, 626–27 (5th Cir. 2025) (quoting *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014)).[7]

Personal jurisdiction exists if the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* Due process requires that the defendant have "minimum contacts" with the forum state (*i.e.*, that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with "traditional notions of fair play and substantial justice." *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). "Minimum contacts" can give rise to

---

[7] *See also Tiro Sols., LLC v. Beacon Hill Staffing Grp., LLC*, No. 3:18-CV-00660-M, 2018 WL 11680916, at *1 (N.D. Tex. Dec. 10, 2018) ("[U]nlike with a Rule 12(b)(6) motion, a court is entitled to consider disputed facts as well as undisputed facts and make findings of fact related to the jurisdictional issue.") (citing *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986)).

8

either specific jurisdiction or general jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). The Magistrate Judge found that Plaintiffs cannot allege either specific or general jurisdiction over the Home Plan Defendants, (R. & R., Dkt. 152, at 13–15), and this Court agrees with that finding. Critically, the Court agrees with the Magistrate Judge's analysis that the Home Plan Defendants' participation in the BlueCard Program does not constitute purposeful availment to establish specific personal jurisdiction. (R. & R., Dkt. 152, at 15) (citing *Choice Healthcare, Inc. v. Kaiser Foundation Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010)).

Plaintiffs also argue, however, that the Court has personal jurisdiction over BCBS Texas because BCBS Texas's role in the BlueCard Program as the "Host Plan" creates an "agency relationship" between it and the Home Plan Defendants. (4thAC, Dkt. 148, at 19–20).[8] Based on this agency relationship, Plaintiffs contend the Court has personal jurisdiction over the Home Plan Defendants. (*Id.*). The Magistrate Judge evaluated Plaintiffs' allegations as to this relationship against the standard for a traditional agency relationship, and found that "Plaintiffs have pleaded that BCBS Texas acts on the [Home Plan] Defendants' behalf[] to determine how much providers are owed for services rendered in Texas" and that "[t]hese facts are sufficient to find that Plaintiffs have sufficiently pleaded that BCBS Texas is Defendants' agent." (R. & R., Dkt. 152, at 16–17). Taking Plaintiffs' allegations as true, the Magistrate Judge concluded that "it is [the Home Plan] Defendants' decision to empower an entity in Texas to make decisions that bind them that allows the exercise of personal jurisdiction." (*Id.* at 17).

The Home Plan Defendants object to the Magistrate Judge's conclusion because they contend (1) Plaintiffs have inaccurately described the relationship between BCBS Texas and the Home Plan Defendants, (Home Plan Objs., Dkt. 155, at 3 n.4), and (2) even taking Plaintiffs'

---

[8] Specifically, Plaintiffs allege, in part: "At all times relevant hereto, [BCBS Texas] acted as and/or was acting as the actual or ostensible agent of the Blue Card Plans in processing and adjudicating the claims and determining the rate of payment for the claims." (4thAC, Dkt. 148, at 20).

allegations as true, they do "not support the conclusion that an agency relationship exists between [BCBS Texas] and any of the Home Plan Defendants through their mutual participation in the Blue Card Program," (*id.* at 8).

To begin its *de novo* analysis, the Court again notes that "[w]here facts relevant to jurisdiction are disputed, [the Court] can weigh the evidence and resolve disputed issues of fact to the extent necessary to determine jurisdiction." *T&W Holding Co.*, 160 F.4th at 626–27 (citation and quotation marks omitted). Further, "[t]o support the exercise of personal jurisdiction based on an alleged agent's activities in the forum state, a plaintiff must cite or proffer facts from which the court could infer an agency relationship. Conclusory assertions, without evidence in the record, are insufficient to infer agency relationship for the purposes of establishing personal jurisdiction." *Blueskygreenland Env't Sols., LLC v. Rentar Env't Sols., Inc.*, No. 4:11-CV-01745, 2011 WL 5553706, at *4 (S.D. Tex. Nov. 14, 2011) (citations omitted). *See LAS Enters., Inc. v. Accu-Sys., Inc.*, No. CIV.A. 11-2196, 2011 WL 6697043, at *2 (E.D. La. Dec. 20, 2011) ("[U]nsubstantiated conclusory allegations are insufficient to establish personal jurisdiction.") (citing *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001)).

To refute Plaintiffs' description of BCBS Texas' relationship with the Home Plan Defendants, the Home Plan Defendants point to a Fifth Circuit case in which that court also evaluated the BlueCard Program and found:

> "As for BlueCard claims administered by [BCBS Texas], the BlueCard program allows beneficiaries covered by out-of-state Blue Cross and Blue Shield plans to access their coverage when receiving medical services in a state other than the one in which their plans are based. If, for example, an out-of-state Blue Cross beneficiary receives medical care in Texas, the medical provider submits a claim to [BCBS Texas], which forwards the claim to the beneficiary's out-of-state Blue Cross plan. **That out-of-state Blue Cross plan makes a coverage determination**, then returns the claim to BCBSTX to pay the claim if there is coverage. Finally, the out-of-state plan reimburses BCBSTX for any payments made on its behalf."

10

*Health Care Serv. Corp.*, 814 F.3d at 246–47 (emphasis added).[9]

Given that the Home Plan Defendants—and the Defendants in this case generally—are the entities that actually effectuate the BlueCard Program and therefore have the most accurate knowledge about how it works, the Court credits the Home Plan Defendants' description of the relationship between BCBS Texas and the Home Plan Defendants. *See T&W Holding Co.*, 160 F.4th at 626–27. Adopting Plaintiffs' depiction of this disputed issue of fact when the ultimate truth of the matter lies in the hands of Defendants would be improper, when resolving this issue is critical to the Court's dispositive consideration of whether it has personal jurisdiction over a subset of Defendants in this case. And, the fact that the Fifth Circuit has considered this issue more than once and described the relationship between BCBS Texas and the Home Plan Defendants as the Home Plan Defendants urge only further convinces the Court of its finding.

As such, the Court holds that no agency relationship exists between BCBS Texas and the Home Plan Defendants such that the Court has personal jurisdiction over the Home Plan Defendants. An agent is one who "consent[s] to act on the principal's behalf and subject to the principal's control" when the principal has "authoriz[ed] . . . the agent to act on his behalf." *Finley Res., Inc. v. Headington Royalty, Inc.*, 672 S.W.3d 332, 343 (Tex. 2023) (citing *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 691 (Tex. 2017)); *see also Gonzalez v. Walgreen Co.*, 140 F.4th 663, 670 (5th Cir. 2025); *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018). Having credited the Home Plan Defendants' representation of the BlueCard Program—*i.e.*, that BCBS

---

[9] The Omnibus Defendants also point to "published authorities that contradict Plaintiffs' characterizations of the BlueCard Program, and the role of the Host and Home Plans in determining coverage, benefits, and payment for the insurance claims at issue in this litigation." (Omnibus Objs., Dkt. 156, at 8–10 & n.6) (first citing *Health Care Serv. Corp.*, 814 F.3d at 246; then citing *Angelina Emergency Med. Associates PA*, 156 F.4th at 512; then citing *Angelina Emergency Med. Assocs. P.A. v. Health Care Serv. Corp.*, 3:18-CV-0425-X, 2024 WL 102666, at *2 (N.D. Tex. Jan. 9, 2024); then citing *Advanced Orthopedics & Sports Med. Inst. on behalf of MS v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 20-13243 (FLW), 2022 WL 13477952, at *7 (D.N.J. Oct. 21, 2022); and then citing *Shah v. Blue Cross Blue Shield of Mich.*, No. 117 CV 711 NLH AMD, 2018 WL 2148866, at *6 (D.N.J. May 10, 2018)).

Texas forwards the claim of an insured individual who received care out of state to that individual's

Home Plan, who then makes the coverage determination and reimburses BCBS Texas for any

payment it then makes on behalf of the Home Plan entity[10]—the Court finds a principal-agent

relationship does not exist between the Home Plan Defendants and BCBS Texas. BCBS Texas is

not an agent acting on the Home Plan Defendants' behalf; rather, BCBS Texas is facilitating the

transfer of money between a Home Plan Defendant and the out-of-state medical provider if the

Home Plan Defendant finds that the insured individual's care was covered under their insurance

plan.[11]

The Magistrate Judge also found that pendent personal jurisdiction exists over the Home

Plan Defendants as an alternate basis for personal jurisdiction. (R. & R., Dkt. 152, at 19–22).

Specifically, the Magistrate Judge found that because the Court has personal jurisdiction over

Plaintiffs' ERISA claims, and the ERISA and non-ERISA claims arise out of a common nucleus of

operative facts, the Court can exercise pendent personal jurisdiction over the Home Plan

Defendants. (*Id.*).

"Pendent personal jurisdiction, like its better known cousin, supplemental subject matter

jurisdiction, exists when a court possesses personal jurisdiction over a defendant for one claim, lacks

an independent basis for personal jurisdiction over the defendant for another claim that arises out of

the same nucleus of operative fact, and then, because it possesses personal jurisdiction over the first

claim, asserts personal jurisdiction over the second claim." *Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp.

---

[10] *See Health Care Serv. Corp.*, 814 F.3d at 246–47.

[11] The Home Plan Defendants also raise an argument that, even if true, "[t]he allegations cited by the Magistrate Judge do not support the conclusion that an agency relationship exists between [BCBS Texas] and any of the Home Plan Defendants through their mutual participation in the Blue Card Program." (Home Plan Objs., Dkt. 155, at 8). They contend that because Plaintiffs allege that BCBS Texas "determines and *controls* the amounts to be paid to the provider under the [H]ome [P]lan," the Home Plan Defendants clearly do not exercise control over BCBS Texas in processing the BlueCard program claims at issue to support a finding of an agency relationship. (*Id.* (citing 4thAC, Dkt. 148, at 19)).

2d 765, 783 (N.D. Tex. 2008) (quoting *United States v. Botefuhr*, 309 F.3d 1263, 1272–73 (10th Cir.

2002)). "[A] defendant who already is before the court to defend a federal claim is unlikely to be

severely inconvenienced by being forced to defend a state claim whose issues are nearly identical or

substantially overlap the federal claim. Notions of fairness to the defendant simply are not offended

in this circumstance." *Id.* (citation omitted). The Magistrate Judge found that although the Fifth

Circuit has not yet addressed this doctrine of federal common law, every circuit court to reach the

issue has approved of pendent personal jurisdiction. (R. & R., Dkt. 152, at 19) (referencing cases

from the Second, Third, Fourth, Seventh, Tenth, D.C., and Federal Circuits). The Magistrate Judge

also cited several District Court opinions in this Circuit that "have also exercised pendent personal

jurisdiction when appropriate." (*Id.*).

The Magistrate Judge used the following common analysis to "ensure the propriety of

pendent personal jurisdiction":

> First, a court must identify an "anchor" claim, i.e., a claim that allows a court to exercise personal jurisdiction over the defendant. Next, the court examines whether the anchor claim and the claim over which the court lacks an independent basis for personal jurisdiction arise out of the same nucleus of operative fact. If yes, then the court must determine whether entertaining the pendent claims against the defendant promotes judicial economy, avoidance of piecemeal litigation, and the overall convenience of the parties. This final step—and thus the overall decision to invoke pendent personal jurisdiction—is within the court's discretion.

(*Id.* at 20 (citing *In re Toyota Hybrid Brake Litig.*, No. 4:20-CV-127, 2021 WL 2805455, at *17 (E.D.

Tex. July 6, 2021)). The Court agrees with the Magistrate Judge that "it is undisputed that the court

has personal jurisdiction over the [Home Plan] Defendants as to Plaintiffs' ERISA claims." (*Id.* at

21). (*See also* Home Plan Objs., Dkt. 155, at 10) ("Plaintiffs' ERISA claims are subject to nationwide

service of process and, as a result, provide for nationwide personal jurisdiction."). Next, the

Magistrate Judge examined whether Plaintiffs' ERISA and non-ERISA reimbursement claims arise

out of a common nucleus of operative facts. (R. & R., Dkt. 152, at 21).

13

A sister court in this District also recently considered this issue, in a similar case brought by Plaintiffs' counsel. *Lone Star 24 HR ER Facility, LLC v. Blue Cross & Blue Shield of Tex., et al.*, No. SA-22-CV-01090-JKP, 2025 WL 1840733 (W.D. Tex. July 2, 2025) ("*Lone Star*"). That court reasoned that the fact that "the medical claims arising from plans governed by ERISA and the medical claims upon which [plaintiff] asserts a breach of contract all involve the same insurance provider does not establish a common nucleus of operative fact" and that the plaintiff's "ERISA cause of action and the breach of contract cause of action implicate different legal standards, different discovery, [and] would proceed under different procedural tracks, as the ERISA cause of action must be adjudicated by bench trial." *Id.* at *6. As such, the court concluded "[t]he convenience provided to [plaintiff] is insufficient to confer pendent jurisdiction over the breach of contract cause of action." *Id.*

The Magistrate Judge disagreed with that District Judge's analysis by reasoning that "[a]lthough the ERISA and non-ERISA reimbursement claims arise from different patient visits and different plans, BCBS Texas's decisions regarding the reimbursement amount was not based on the Home Plans—it was based on BCBS Texas's determination." (R. & R., Dkt. 152, at 21). Because the Magistrate Judge reasonably accepted Plaintiffs' allegations as true, that court centered its analysis on the assertion that all payment-amount determinations were made by BCBS Texas, "according to *its* relationship with the SCEC Plaintiffs." (*Id.* (citing 4thAC, Dkt. 148, at 20) (emphasis in original)). As such, the Magistrate Judge concluded that Plaintiffs' claims "will involve the same nucleus of operative facts—namely BCBS Texas's determination of reimbursement rates." (*Id.* at 22). The Magistrate Judge agreed with the District Judge in *Lone Star* that "ERISA and non-ERISA reimbursement claims implicate different legal standards, discovery methods, and will proceed under different procedural tracks," but ultimately concluded that "it is nonetheless still more judicially efficient to have the issues—at which BCBS Texas is at the center—determined in one litigation rather than a myriad of litigations scattered throughout the country." (*Id.*).

14

Given this Court's conclusion that the Home Plan Defendants—rather than BCBS Texas—make the coverage determinations for insured individuals who receive medical care out of state, the Magistrate Judge's finding as the existence of a common nucleus of operative facts here necessarily cannot stand. To the contrary, with each of the Home Plan Defendants making coverage determinations for Plaintiffs' medical claims, there is not an equivalent common nucleus of operative facts here. *See Lone Star 24 HR ER Facility, LLC*, 2025 WL 1840733, at *6 ("The fact that the medical claims arising from plans governed by ERISA and the medical claims upon which [plaintiff] asserts a breach of contract all involve the same insurance provider does not establish a common nucleus of operative fact. Although the allegations pertaining to each medical claim are the same, these subject medical claims all involve individual and different patients and concern different insurance plans.").

The Court benefits from the Home Plan Defendants' further analysis on this point:

> Consider, for example two patient-plaintiffs: one (the 'ERISA Plaintiff') has an ERISA benefit plan with a Home Plan Defendant, while the other ('Insurance Plaintiff') has a non-ERISA health insurance contract with the same Home Plan Defendant. The ERISA Plaintiff and the Insurance Plaintiff are not covered by the same health plan. These plans may have different "copayments, coinsurance, and deductibles" that affect the amount to be reimbursed. While Plaintiffs allege [BCBS Texas] set[s] the reimbursement rates for the claims, the actual payments would be dictated by the terms of the plans themselves – plans that are not alleged to be the same or similar across all claims against a given Home Plan Defendant. . . . The allegation that some claims were denied – rather than allegedly reimbursed at rates allegedly determined by [BCBS Texas] – underscores the fact that a denied claim under a non-ERISA plan will not have the same "nucleus of operative fact" as a reimbursed claim under an ERISA plan. . . . The ERISA Plaintiff and the Insurance Plaintiff were not treated on the same day, nor was their condition or treatment the same (or even similar).

(Home Plan Objs., Dkt. 155, at 11–12) (citations omitted)). As such, the Court finds that exercise of discretionary pendent jurisdiction is not appropriate under these facts.

**B. Omnibus Defendants' Objections**

In their objections to the Magistrate Judge's Report and Recommendation, the Omnibus Defendants argue that the Magistrate Judge erred both by recommending that the unnamed Patient Plaintiffs can proceed without disclosing their names and by "accepting Plaintiffs' argument that it is permissible at the pleading stage for the [4thAC] to allege both a Patient Plaintiff and a SCEC Plaintiff has standing on the same claim, deferring determination of the real party in interest until later." (Omnibus Objs., Dkt. 156, at 13, 17). Plaintiffs did not reply to the Omnibus Defendants' objections, but, as the Report and Recommendation points out, (Dkt. 152, at 7), taking Plaintiffs' allegations as true, the SCEC Plaintiffs and the Patient Plaintiffs are not both seeking to recover— only one is entitled to recovery. (*See* Pls.' Corrected Resp. Omnibus Mot. Dismiss, Dkt. 136, at 5). The Court begins its analysis with the issue of standing, given that if the Court finds the Patient Plaintiffs do not have standing, the Court will no longer need to reach the parties' arguments about allowing the Patient Plaintiffs to proceed unnamed.

"Every party that comes before a federal court must establish that it has standing to pursue its claims." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). "ERISA does not supply the provider with a basis for bringing its claim directly against the appellants; instead, the provider's standing to bring this lawsuit must be derived from the beneficiary and it is subject to any restrictions contained in the plan." *Dialysis Newco, Inc. v. Cmty. Health Sys. Grp. Health Plan*, 938 F.3d 246, 250 (5th Cir. 2019). Federal courts lack jurisdiction to hear providers' ERISA claims where there is a deficient assignment or where the insurance plan contains "a valid and enforceable anti-assignment clause[.]" *Id.*

This Court agrees with both the Magistrate Judge and Defendants that when a cause of action is assigned or transferred, the assignee becomes the real party in interest and the assignor is

16

no longer a real party. (R. & R., Dkt. 152, at 7).[12] However, while the Magistrate Judge understandably relied on a sister court in this District's reasoning in the "*Windmill Wellness*" cases[13]— a set of cases with similar facts to the one at bar—to evaluate this issue of standing when a cause of action is assigned or transferred, the Court finds those cases distinguishable here.

In an order granting the plaintiff's motion for leave to amend, that sister court found that it was "undisputed that *either* Windmill [(the provider, analogous to the SCEC Plaintiffs)] *or* the plan beneficiaries can recover for the alleged nonpayment and underpayment of claims submitted to Defendants [(BCBS entities)]." *Windmill Wellness* I, at *2–3 (emphasis in original). As such, in allowing the provider plaintiff, Windmill, to join the individual patients as plaintiffs, the court held:

> Which of the two can recover, however, hinges on whether a valid assignment has been made to Windmill. If a valid assignment was made, Windmill has standing to pursue legal action and recover payment for the submitted claims. If a valid assignment was *not* made, the plan beneficiaries are proper plaintiffs and real parties in interest, even though Windmill will ultimately recover the proceeds.

*Id.* The court relied on the Fifth Circuit's reasoning in *McAllen Grace Brethren Church v. Salazar*, 764 F.3d 465, 471 (5th Cir. 2014), in finding that "[w]ith both Windmill and the plan beneficiaries as plaintiffs, the Court need not determine at this juncture the validity of any purported assignment, as at least one of them has standing to bring this action" and further that "[t]o the extent Defendants still want to challenge the validity of the assignment, they can do so as the case proceeds." *Id.* at *3 (citing *Salazar*, 764 F.3d at 471 ("It is well-settled that once we determine that at least one plaintiff

---

[12] Under Texas law, "upon assignment of a right, the assignor's interest in that right is extinguished." *Menendez v. Timberblinds, LLC*, No. 4:21-CV-914, 2022 WL 657970, at *8 (E.D. Tex. Mar. 4, 2022). Thus, after an assignment, "an assignor is no longer a real party in interest." *UICI v. Gray*, No. 3:01-CV-0921-L, 2002 WL 356753, at *6 (N.D. Tex. Mar 1, 2002) (holding once "a cause of action is assigned or transferred, the assignee becomes the real party in interest with the authority to prosecute the suit to judgment").

[13] *See Windmill Wellness Ranch, L.L.C. v. Blue Cross & Blue Shield of Tex.*, No. SA-19-CV-01211-OLG, 2022 WL 18585976 (W.D. Tex. Aug. 26, 2022) ("*Windmill Wellness* I"); *Windmill Wellness Ranch, LLC v. BCBS*, No. SA-19-CV-1211-OLG, 2023 WL 4842453 (W.D. Tex. July 27, 2023) ("*Windmill Wellness* II"); *Windmill Wellness Ranch, L.L.C. v. United Servs. Auto. Ass'n*, No. SA-22-CV-1201-OLG-HJB, 2024 WL 4312254 (W.D. Tex. July 31, 2024), *report and recommendation adopted*, No. SA-22-CV-1201-OLG, 2024 WL 4314953 (W.D. Tex. Sept. 24, 2024) (("*Windmill Wellness* III").

17

has standing, we need not consider whether the remaining plaintiffs have standing to maintain the suit.")).

First, this Court again notes that it is undisputed that the Fourth Amended Complaint pleads the following:

> *Each* of the individual Patients not only assigned benefits to the SCEC facilities, but also appointed SCEC to act as their personal and legal representative to pursue administrative appeals, and to bring a lawsuit, if necessary, in order to secure proper health plan benefits for the emergency medical care received during their admissions to SCEC facilities.

(4thAC, Dkt. 148, at 3) (emphasis added). As opposed to *Windmill Wellness* I, there is no question whether the assignments here were valid—Plaintiffs have alleged that they exist and do not dispute their validity, and Defendants do not dispute their existence or validity either nor raise the existence of any anti-assignment claims. *Cf. Windmill Wellness* I, at *3. When evaluating a Rule 12(b)(1) facial attack, as the Omnibus Defendants explicitly bring here, the Court must take Plaintiffs' allegations as true. *See Lee v. Verizon Commc'n, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (when "the movant mounts a 'facial attack' on jurisdiction based only on the allegations in the complaint, the court simply considers 'the sufficiency of the allegations in the complaint because they are presumed to be true.'") (quoting *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). Plaintiffs are the "master[s] of [their] complaint," *Freedom From Religion Found., Inc. v. Mack*, 4 F.4th 306, 312 (5th Cir. 2021), and constantly bear the "burden of proof that jurisdiction does in fact exist," *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Accordingly, taking Plaintiffs' allegations as true, the Patient Plaintiffs validly assigned and therefore transferred their benefits and rights to sue to the SCEC Plaintiffs. (4thAC, Dkt. 148, at 3). As such, being that "a valid assignment has been made" to the SCEC Plaintiffs, *only* the SCEC Plaintiffs have standing "to pursue legal action and recover payment for the submitted claims."

18

*Windmill Wellness* I, at *2.[14] *See Paris Emergency Ctr., LLC v. Blue Cross & Blue Shield of Tex.*, No. 5:24-CV-0002-RWS, 2024 WL 5642497, at *2–3 (E.D. Tex. Nov. 7, 2024) (finding that similarly situated sets of plaintiffs could not assert standing for the same claims because "standing cannot be dispensed in gross") (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021)); *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*, No. CIV.A. H-15-0297, 2015 WL 3756492, at *2 (S.D. Tex. June 16, 2015).[15] *See also Windmill Wellness* II, at *3 ("The Plan Members therefore have standing and are proper plaintiffs in this case, *unless* they validly assigned their interests to Windmill—which Defendants contend is barred by the anti-assignment clause in the Plan. On the other hand, *if there was a valid assignment*, then Windmill has derivative standing and is the proper plaintiff in this case.") (emphasis added).

Given the Court's conclusion that the Omnibus Defendants' motion to dismiss the Patient Plaintiffs under Rule 12(b)(1), (Dkt. 107), should be granted, the Court need not further consider the issue of allowing those Patient Plaintiffs to proceed unnamed.

## V. CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Report and Recommendation of United States Magistrate Judge Mark Lane, (R. & R., Dkt. 152), is **ADOPTED IN PART AND REJECTED IN PART**, such that:

1.  The Omnibus Motion to Dismiss and its included Motion to Strike, (Dkt. 107), is

    **GRANTED IN PART AND DENIED IN PART**, as follows:

---

[14] The Court also agrees with the Omnibus Defendants that the Fifth Circuit's holding in *Salazar* is inapposite as *Salazar* involved a claim for injunctive relief, whereas Plaintiffs here seek monetary damages.
[15] Several other courts outside of this Circuit have also found that when a patient assigns their insurance benefits to a healthcare provider, that provider gains the standing to sue for that payment. *See, e.g.*, *Brown v. BlueCross BlueShield of Tenn., Inc.*, 827 F.3d 543, 548 (6th Cir. 2016); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 450 (3d Cir. 2018); *Haag v. MVP Health Care*, 866 F. Supp. 2d 137, 141 (N.D.N.Y. 2012).

   a.   The Motion to Strike is **GRANTED** and all ERS, TRS, FEHBA reimbursement claims as well as reimbursement claims subject to the NSA and SB 1264 shall be **STRICKEN** from the Complaint.

   b.   The Omnibus Motion is **GRANTED** as to the matter of the Patient Plaintiffs' standing, such that the Patient Plaintiffs are **DISMISSED** and the Clerk of Court shall **TERMINATE** them from this case;

   c.   The Omnibus Motion as to subject matter jurisdiction over the Patient Plaintiffs for failure to comply with Rules 10 and 17 is **MOOT**;

   d.   The Omnibus Motion is **GRANTED** as to Breach of an Implied-in-Fact Contract such that this claim is **DISMISSED WITH PREJUDICE**;

   e.   The Omnibus Motion is **DENIED** as to Breach of the Insurance-Plan Contracts; and

   f.   The Omnibus Motion is **GRANTED** as to Count Three: Declaratory Judgment and Count Three is **DISMISSED WITH PREJUDICE**.

2.   Defendants' Motions to Dismiss (Dkts. 108, 109, 110, 112, & 113) are **GRANTED IN PART** such that Plaintiffs' state breach of contract claims under Count Two of the Fourth Amended Complaint are **DISMISSED WITHOUT PREJUDICE** as to these Defendants for lack of personal jurisdiction;

3.   Defendant Premera Blue Cross's Motion to Dismiss, (Dkt. 114), is **DENIED**;

4.   CFMI's Motion to Dismiss, (Dkt. 115), is **GRANTED** such that Defendant Care First, Inc. is **DISMISSED** and Plaintiffs' state breach of contract claims under Count Two of the Fourth Amended Complaint are **DISMISSED WITHOUT PREJUDICE** as to CMFI for lack of personal jurisdiction;

5. BCBS Alabama's Motion to Dismiss, (Dkt. 111), is **GRANTED IN PART** such that claims administered on behalf Alabama State Employees' Health Insurance Plan ("SEHIP"), the Local Government Health Insurance Program ("LGHIP"), and the Public Employees' Health Insurance Plan ("PEEHIP") with the following "Ticket Numbers" are **DISMISSED** from the suit: K116625, K120743, K120264, K144952, K015981, K102458, K127722, K129658, K145669, K011578, K058209, K061066, K062119, K064047, and Plaintiffs' state breach of contract claims under Count Two of the Fourth Amended Complaint are **DISMISSED WITHOUT PREJUDICE** as to BCBS Alabama for lack of personal jurisdiction;

6. Named Defendants Anthem Health Plans, Inc. d/b/a Anthem Blue Cross Blue Shield of Connecticut; Anthem Blue Cross Blue Shield of Indiana, a division of Anthem, Inc.; and Blue Cross & Blue Shield of North Dakota are **DISMISSED WITHOUT PREJUDICE** as they have not been timely served;

**IT IS FURTHER ORDERED** that Plaintiffs file an updated Reimbursement Claims List **within thirty days** that conforms to the above rulings.

**SIGNED** on March 24, 2026.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE